(24 App. Div. 531.)

In re CAREY'S WILL.

(Supreme Court, Appellate Division, Fourth Department. December 18, 1897.)

1. SURROGATE'S DEATH—UNFINISHED BUSINESS—WILL CONTESTS.
    Code Civ. Proc. § 2481, subds. 8, 9, embraced in an article entitled, "Jurisdiction of the Court and Authority of the Surrogate," provide that a surrogate, in or out of court, has power to complete any unfinished business pending before his predecessor, "including proofs, accounts and examinations," and to complete and certify in his own name all records or papers left uncompleted or unsigned by any predecessor. Section 2500 requires the surrogate to file every deposition, petition, and report, and to deliver to his successor all books and papers. Sections 2513, 2541, and 2542 provide for a stenographer, who is required to take full notes of all oral proceedings, and require the testimony to be written out from the notes, and, after being authenticated, to be filed. Sections 2539 and 2540 provide for the examination of aged and infirm witnesses residing in another county by the surrogate of such county, or by a referee. *Held,* that where a surrogate dies after the evidence is closed in a will contest, and before he renders his decision, his successor is empowered to take up the proceedings where they were left by deceased, and need not recall the witnesses and retake their testimony, though Const. art. 6, § 3, contemplates that a judge who has to decide a controverted question of fact should see the witnesses, and hear them give their testimony.

2. WILLS—ACKNOWLEDGMENT TO WITNESS—SUFFICIENCY OF EVIDENCE.
    On an issue whether testator acknowledged his signature in presence of N., an attesting witness, the other witness testified that, just before N. signed, testator said in N.'s hearing that he had made his will, and then asked N. to sign as a witness. N. did not deny said testimony. He was extensively engaged in business, and testified that he had forgotten that he had signed as a witness, and that the death of testator within a year afterwards did not refresh his recollection. The statement signed by the witnesses recited that the instrument was "subscribed by [testator] in the presence of us, and each of us. He, at the time of making such subscription, acknowledged that he made the same, and declared," etc. *Held,* that the evidence showed that testator acknowledged his signature in N.'s presence, though N. testified that testator did not say it was his will.

Appeal from surrogate's court, Oneida county.

Proceedings by Susan E. Hadcox and Mary R. Cody to probate the will of James A. Carey, deceased. Pending the proceedings, Susan E. Hadcox was given leave to withdraw as proponent, and to contest the probate of the will on the ground of want of due execution and publication. From a judgment (36 N. Y. Supp. 817) admitting the will to probate, contestant appeals. Affirmed.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

Charles H. Searl, for appellant.

S. M. Lindsley, for respondent.

GREEN, J. Proceedings for the probate of the will were instituted before Surrogate Bright. Many witnesses were sworn on behalf of proponent and contestant, and the evidence was closed, and the case submitted to him for final decision; but, before any decision was rendered, the surrogate died. The matter was then brought before his successor, who ruled that he was empowered to take up the proceedings where they were left by the deceased surrogate, and gave both parties the right to produce additional and explanatory evidence. Contestant objected to the reception of the evidence previously taken, and demanded that the witnesses be recalled, and their testimony taken; and, to the refusal of the court to so order, an exception was taken. Thereupon the contestant, saving her exception, recalled one of proponent's witnesses for examination, and the latter recalled another witness. Upon a review of the whole evidence, as taken down by the stenographer, and filed as a record of the court, the court based its decision and decree admitting the will to probate. Upon the exception so taken as aforesaid, the appellant demands a reversal of the decree.

The ruling of the court was founded upon subdivision 8 of section 2481 of the Code of Civil Procedure, which is embraced in an article entitled, "Jurisdiction of the Court and Authority of the Surrogate." That section provides that:

"A surrogate in court or out of court, as the case requires, has power: * * * (8) Subject to the provisions of law, relating to the disqualification of a judge in certain cases, to complete any unfinished business, pending before his predecessor in the office, including proofs, accounts and examinations. (9) To complete and certify and sign in his own name, adding to his signature the date of so doing, all records or papers, left uncompleted or unsigned by any of his predecessors."

In Throop's note to section 2481 it is stated that "subdivision 8 consists of 2 Rev. St. p. 223, § 11, amended by the addition of the first and last clauses." It was held in Reeve v. Crosby (1877) 3 Redf. Sur. 74, that this provision (section 11) authorizes the surrogate to take up and try work his predecessor had left, and to complete it, and pronounce his decision upon the testimony taken before both. But see McNaughton v. Chave, 5 Abb. N. C. 225. The provision of section 11 was embraced in an article entitled, "Of Surrogates' Courts," prescribing the jurisdiction of the court, and declaring the powers and duties of the surrogate:

"Sec. 11. Upon the office of any surrogate becoming vacant, his successor shall have power and authority to complete any business that may have been begun, or that was pending before said surrogate."

Under this provision the surrogate of Kings county held that he was empowered to take up the probate of a will at the point where it was left by his predecessor, complete the proofs, and then decide the question at issue upon the whole evidence, including that which was taken before his predecessor. In re Martinhoff (1880) 4 Redf. Sur. 286, following 3 Redf. Sur. 74. The case of McNaughton v. Chave, supra, is to the same effect. In Re McCue (1883) 17 Wkly. Dig. 501,

the surrogate filed an opinion expressive of his views, but in no other
manner made any findings of fact or conclusions of law. His suc-
cessor proceeded upon that opinion, and made formal findings of fact,
and a decree accordingly. Daniel, J., in delivering the opinion of the
court, expressed a doubt whether the findings and decree, "made un-
der the circumstances stated," legally admitted the will to probate;
but the decision of the court, reversing the decree, was based upon
other grounds. It does not appear whether the surrogate proceeded
to complete the unfinished business by giving notice to the contest-
ants, or any opportunity to introduce further proof, or that he ever
reviewed the evidence taken. On the contrary, the inference from
the statement in the report is that the surrogate merely "proceeded
upon the opinion of Surrogate Colvin," and upon that alone made up
the findings. The proceedings in that case were instituted subse-
quently to the enactment of the present Code. The correctness of
the decision of the surrogate of New York, made 20 years ago (3
Redf. Sur. 74), has never been questioned by any court, so far as the
Reports disclose; and we may assume that it has been accepted and
frequently followed by the surrogates throughout the state as sound
doctrine. Whatever doubts may now be entertained in respect to
the soundness of that decision at the time it was rendered, is a mat-
ter of no consequence; for we believe it was the evident purpose of
the revisers of the Code to remove all doubt and uncertainty by an
express provision that the surrogate, in court or out of court, shall
have and possess the jurisdiction or power to complete the proofs,
accounts, and examinations in any business or proceeding pending
before his predecessor in office, and left unfinished. The court, in
the case referred to, implied or inferred the power of the surrogate
from the general provision of section 11 of the Revised Statutes. As
that decision was before the revisers when they formulated section
2481, it is utterly inconceivable that they undertook to abrogate or
impair the rule of law there enunciated by conferring, in express
terms, the power to complete the proofs and examinations. On the
contrary, the effect of such amendment was to strengthen and fortify
the decision, and to authorize the completion of the proofs in con-
tested proceedings as well as in proceedings uncontested. The con-
stitution (article 6, § 3) contemplates that a judge who has to decide
a controverted question of fact should have the advantage of seeing
the witnesses, and hearing them give their testimony; and it is a
just requirement (one which a sense of propriety commends) that the
evidence in a cause, when practicable, be given in the presence of
those who are to adjudicate thereon. Draper v. Day, 11 How. Prac.
441. Still, it is competent for the legislature to provide that, in view
of particular circumstances or contingencies, the presence of a wit-
ness or witnesses before the court or judge taking cognizance should
be dispensed with; and that is what the legislature has, in effect,
prescribed for the special case before us. In the court of chancery
the witnesses were usually examined by examiners appointed by the
court for that purpose; and, if a party desired an examination of
the witnesses in the presence of the vice chancellor, he was required
to apply for an order, which would not be granted without sufficient

cause shown. But the practice of examining witnesses before a vice chancellor was very seldom resorted to. If the vice chancellor deemed it expedient that the witnesses should be examined in his presence, he would so order. Where a cause was at issue, and in readiness for hearing, or to take testimony against all the defendants, if the party wished to have the testimony taken in open court at the hearing of the cause he was obliged to apply for an order; but such an order would not be granted without sufficient cause being shown, making it necessary or expedient to have the witnesses examined in open court, instead of being examined in the usual manner. Under that system of procedure the majority of causes were brought to a hearing, and a determination solely upon the depositions returned.

The Code provides for the appointment of a stenographer by the surrogate of each county, and he is required to take full stenographic notes of all proceedings in which oral proofs are given; and the testimony must be written out at full length from the notes, and the minutes thereof, and, after being properly authenticated, must be filed among the records of the court. Sections 2513, 2541, 2542. And the surrogate is required to file and preserve every deposition, petition, and report, and to deliver to his successor all books and papers. Section 2500. A provision is made for the examination of aged and infirm witnesses residing in another county by the surrogate of said county, or by a referee. Sections 2539, 2540. Upon the depositions so taken and returned, together with such other proof as may have been adduced before him, the surrogate proceeds to determine the matters in controversy. In view of these directions, we are unable to perceive anything in the nature or circumstances of the case that compels or requires the court to limit the effect and operation of the clause "including proofs and examinations" to uncontested matters or proceedings, or to insert words to that effect by way of judicial construction or amendment, or to draw a distinction where the legislature has made none.. On the contrary, there are reasons of justice, necessity, or expediency, that may be suggested for giving full effect and operation to the language employed to express the legislative intention. If it was not designed to give surrogates this power in proceedings contested, then there was no necessity for the addition of such clause to the provision of the Revised Statutes. We therefore conclude that the intent of the statute conferred upon this surrogate the power to act as he ruled he had the authority to act, and that such ruling presents no error. Such conclusion therefore brings us to the consideration of the question whether the findings of the surrogate are justified by the evidence in the case.

April 18, 1890, James A. Carey died. Susan E. Hadcox and Mary R. Cody are sisters, and the only children of the deceased. The will in question was, shortly after his decease, found among his papers by his daughters. The will is dated May 8, 1889, and by it he gave to his daughters the use of all his property during their lives (the appellant, however, to have the use of $2,000 more than the respondent); the property then to go to his legal de-

scendants.    He also appointed both daughters executrices of the
will, and required them to give bonds for the faithful performance
of their duties as such executors.    On April 26, 1890, eight days
after Mr. Carey's decease, the appellant and respondent each veri-
fied a petition, directed to the proper surrogate, to have the will
admitted to probate; and on the same day each of them took and
subscribed the usual oath as executrix of said will.    Joseph S.
Avery had been retained to represent them as their attorney in the
proceedings before the surrogate.    The petition was duly filed
with the surrogate on May 5, 1890.    Citations were issued, return-
able May 12, 1890.    On the return day, on the application of Mr.
Avery, attorney for the petitioners, a commission, with interroga-
tories annexed, was duly issued, to a commissioner therein ap-
pointed to take the examination of Byron A. Topping, one of the sub-
scribing witnesses, who then resided in Washington, District of Col-
umbia.    The examination was duly had, and the commission duly exe-
cuted, and returned to the court, and filed therein, May 19, 1890.    On
that day, upon application of Mr. Avery, who was still acting for both
petitioners, the matter was set down for hearing for May 26, 1890.
On that day the other subscribing witness failed to appear, and a
subpœna was by the court directed to be issued and served on him,
returnable on the following day, and the proceeding adjourned to that
time.    It appears from the evidence that intervening the filing of the
petition for the probate of the will, and May 26, 1890, Susan E. Had-
cox had endeavored to secure sureties upon her bond as executrix,
and had been unsuccessful.    On May 27, 1890, she appeared by Mr.
Searl, as her attorney, and filed her petition and affidavit, both veri-
fied on that day, asking leave to withdraw as petitioner for the pro-
bate of the will, and for leave to contest the probate of the will, on the
ground, as stated in her petition, "that one of the subscribing witness-
es to said will did not see the testator sign the same, and did not see
his signature to the same, and that said Carey did not acknowledge
to said Northrup that said instrument was his will."    Thereafter her
petition was granted, and proceedings were thereupon had upon such
contest, which resulted in the decree from which this appeal is taken.
The will, including the attestation clause, was, on the day it bears
date, prepared by James A. Carey.    It was executed on the same day.
At that time the testator was 65 years of age.    He was shown to have
had experience in drafting conveyances, contracts, and legal docu-
ments of a like nature.    He was careful and accurate in his own busi-
ness, and in transacting the business of others intrusted to his care.
It is in evidence that previous to preparing the will in question he
had drafted and attended to the execution of at least five other wills;
and the evidence tends to show that he was familiar with the statu-
tory requirements for the due execution of such an instrument, and
that he observed a compliance with these requirements.    He at least
had sufficient confidence in his own experience in, and knowledge of,
the preparation of legal documents, to himself prepare this instru-
ment, disposing of more than $20,000 of property;  being all the ac-
cumulations of a long and busy life.    On the morning of the day the
will bears date, he went to the store of George B. Northrup, in the

village where testator resided, and, in the office of the store, prepared the will. It is fully established that, while he was preparing the will, W. Byron Topping, who was then a clerk in the store, was present in the office; that, when he had fully prepared the same, he asked Topping where Northrup was, and told Topping he was going West, and was making his will, as he did not know what might happen before he got back, and that he wanted Northrup and Topping to witness the same; that he was told by Topping that Northrup was expected in a short time, and that thereupon the testator signed the will, at the end thereof, in the presence of Topping; that Topping saw him sign it; that he then and there declared it to be his last will and testament, and requested Topping to sign the same as an attesting witness; and that the latter so signed the same at the testator's request, and in his presence. The uncontradicted evidence further discloses that, immediately after so signing the same, Topping went into the store, and said to Northrup, "Carey has got a paper here he wants you to witness;" that thereupon they both passed into the office, and the testator handed the will to Northrup, and asked him to sign the same; that Northrup took the same, and signed the testamentary clause thereof, directly over the signature of the witness Topping, in his presence and in the presence of the testator; that, at the time of signing the same, Northrup knew the paper he was so signing was the will of James A. Carey. The statutory requirements, therefore, that the will should be subscribed by the testator, at the end thereof, and that at least two witnesses should sign their names as attesting witnesses thereto, at the request of the testator, were fully complied with. Therefore the only remaining question necessary to review is whether the testator signed the same, or acknowledged his signature thereto, in the presence of the witness Northrup.

The witness Northrup testified that the testator handed the paper to him, but that he did not say it was his will, that the testator did not sign the will in his presence, and that he did not see the testator sign the same. Northrup says:

"He saw me sign. I understood it was the will of Carey, because Mr. Topping told me so. He told me so when I was signing the paper. Mr. Carey was present."

Northrup testified that, after the will had been handed to him—

"I remember speaking to Mr. Topping in the office, and in the presence of Mr. Carey. I asked him how many sheets of paper there were. There was but one sheet of paper. I can't remember exactly what I said, but I spoke to Topping, and said there was but one sheet of paper."

Witness further testified:

"I knew at that time, in wills, there was something essential about the number of sheets of paper. I understood that the number of sheets of paper in a will was an essential and important matter to be considered, and remarked about it."

So it appears that before signing the paper which had been handed to him, and which he knew to be the will of Mr. Carey, the witness, who was impressed with the fact that it was essential to know before signing the extent and amount of paper used in its preparation, examined the same. The witness Northrup further

testified that while the will was in his possession, and before he signed the same, and in the presence of the testator, the witness Byron Topping said to Northrup that that was Mr. Carey's will. Topping testifies that, after the will had been handed to Northrup—

"I says: 'It is his will. I have witnessed it, and he wants you to witness it.' George sat down, and he took hold of it, and he says, 'We ought to know how many sheets there is,' and made the remark, 'There is one.' "

The witness Northrup, however, testified that although Topping stated to him, in the presence of Mr. Carey, that it was the latter's will, in doing so he "kind of whispered," and that Mr. Carey was very deaf. The witness Topping contradicts this, and says that he "spoke in an ordinary tone when I made the statement to Northrup." There is also abundance of evidence showing that testator's hearing was only slightly defective, and that he could hear conversation carried on in ordinary tones. Northrup himself testified:

"Mr. Carey was not so deaf but that I could carry on conversations with him, and he did business up to the time of his death; dealt with business men, and talked with them. He was not so deaf but that he could do that."

Mr. Northrup gives no reason whatever for any secrecy in the communication made to him. Only the testator and the witnesses were present, either in the office or in the store, so far as appears from the evidence; and, if Mr. Topping had desired to communicate those words to Mr. Northrup without testator's knowledge, it would not have been necessary to whisper, if the testator had been afflicted with deafness to the extent testified to by Northrup. Certainly there is nothing to show that the testator himself desired to conceal anything from those who had been summoned by him, or at his instigation, to witness his will. He prepared his will in the office, and Topping, the clerk, was present during most of the time consumed in its preparation. He had declared it to be his last will and testament, to Topping; had requested him to sign it as a witness; had deputized and instructed him to procure Mr. Northrup, the other witness, which had been done; and upon the appearance of Mr. Northrup the testator delivered to him, and into his possession, the will, which was, to some extent, at least, examined by the witness in the presence of the testator. It further appears from the evidence of the witness Topping that just previous to the signing of the attestation clause of the will by Northrup, and in the presence and hearing of Northrup, testator said he was going West, and had made his will, and then asked Mr. Northrup to sign as a witness. The witness Northrup does not deny this. In these respects, as well as in several others, the present case differs from that of In re Abercrombie's Will (recently decided by this court) 48 N. Y. Supp. 414. After all this had occurred, Northrup signed the following statement, which is directly after the name of James A. Carey, at the end of the will in question:

"The above instrument, consisting of sheet of paper, was at the date thereof subscribed by James A. Carey in the presence of us, and each of us. He, at the time of making such subscription, acknowledged that he made the

same, and declared the said instrument so subscribed by him to be his last will and testament, whereupon we then and there, at his request, and in his presence, and in the presence of each, subscribed our names as witnesses thereto."

The witness Northrup, it appears, is an active business man, and has been for many years. He testified:

"I am engaged in the mercantile business. Keep a general store at Deansville. I am also a farmer. Own four or five farms. Can't tell without figuring up. Am in the manufacture of vinegar and cider in a company. A gristmill. And I sell hop poles and things outside of any firms. I am a general dealer in whatever I think I can make anything on. I have been an agent of a Western loan company, and have sold some of those Western mortgages. My wife had an interest in the estate of her father, and I looked after her interest. I was not executor or administrator. It was the same as to my mother-in-law's estate. I think I have been a notary eight years. As notary, I have taken acknowledgments of papers,—any papers that are presented to me: Pension papers, mortgages, assignments, deeds. I have written mortgages, deeds, and assignments for other people, and superintended their execution and acknowledgment, and I procured my appointment for that purpose."

In view of the multifarious cares and duties which must have devolved upon this very active and energetic business man, and which would necessarily, to a great extent, banish from his mind transactions not intimately connected with his own affairs and interests; and in view of the fact that the witness Northrup does not deny the evidence of the witness Topping that the testator declared this instrument to be his will, in the presence of Northrup, before he signed the same; and in view of the evidence of Northrup himself that he had forgotten that he had signed his name as witness to this will, and that the death of Mr. Carey within the year following the making of his will which was witnessed by Northrup failed to refresh his recollection, and that he only remembered it after Mr. Hadcox, the husband of the contestant, had informed him that he was one of the witnesses who had subscribed the will,—in view of all this, it would not be strange that he had failed to carry in his mind all the details of the execution of the will; and the statement which he signed at the time of the transaction, that James A. Carey "acknowledged that he made the same, and declared the said instrument so subscribed by him to be his last will and testament," may well be relied upon as the veritable and reliable record of what did actually transpire at that time. If the fact of his signing an instrument of this character, which he knew at the time was the disposition, by his friend of 20 years' standing, of all the property he possessed, had completely passed from his memory within less than 1 year from the transaction, it may readily be inferred that lapse of memory and want of recollection fully explain his evidence as to what did not take place at that time, when he testifies that the testator did not acknowledge the execution of the will. Certainly this court would not be authorized in overthrowing the testamentary bequests contained in the will which was witnessed by Mr. Northrup upon his evidence concerning what he says was left undone at the time of the execution of the instrument. There is no question as to the

intention of testator. The will is in his own handwriting, and speaks for itself. His acts and conversation at that time indicate an active desire upon his part to have that instrument properly and legally executed. This is shown most conclusively by the will itself. It appears upon its face to be in every respect a will executed in exact conformity to all the statutory requirements; and, with the exception of the signatures of the two witnesses, every word in the will is in the handwriting of testator, even to the place of residence of each witness. In Re Cottrell, 95 N. Y. 339, it is said:

"It was always considered to fortify and strengthen the presumption of compliance with the requirements of the statute in relation to execution of wills that they have been constructed under the supervision of experienced persons, familiar, not only with the forms required by the law, but also with the importance of a strict adherence thereto. * * * The presumption arising from the certificate of the subscribing witnesses, and the supervision of an experienced person, that the formalities are complied with, was fortified by the acts and conduct of the testator. * * * He had ample time and opportunity to supply any defect in its execution, if any existed. * * * Testator had not only once correctly gone through the ceremony of executing a will, but, by drawing the attestation clause in question, he had at the time necessarily brought before his mind each one of the conditions imposed by the statute as necessary to its valid execution."

Again, in the Cottrell Case, at page 340, are words so appropriate to this case that they would seem to have been prompted by facts precisely like those in the case under review:

"No controversy can arise in this case over any question as to the real intention of the testator in the disposition made by this will of his property; for not only were his wishes deliberately formed, but they are recorded in his own handwriting, which implies care and deliberation on his part in forming its provisions and directions. It is the duty of the court to carry into effect the testator's intentions, when they can be discovered, provided they do not contravene any provision of law. It is too late to claim that the facts making due execution must all, or any of them, be established by the concurring testimony of the two subscribing witnesses. Both of these witnesses must be examined, but the will may be established even in direct opposition to the testimony of both of them."

It is very clear to me that there was a compliance with every requirement of the statute necessary to be observed in the execution of this instrument. Certainly, there was a substantial compliance with the statute, and that is always sufficient. It was not necessary for this testator to use any particular form of words in the publication of the will. As was said in Re Hunt, 110 N. Y. 281, 18 N. E. 107:

"We think that it is a sufficient compliance with the statutory requirements, if, in some way or mode, the testator indicates that the instrument the witnesses are requested to subscribe as such is intended and understood by him to be his executed will. In probate cases the courts look to the substance of the transaction, and see that there is no opportunity for imposition or fraud."

In Lane v. Lane, 95 N. Y. 501, the language is peculiarly applicable to the case at bar:

"The testator knew, and the witnesses understood from his acts and conduct, as he intended they should, that the instrument then executed was his will. The statute upon this point exacts nothing more."

Again, in Re Pepoon, 91 N. Y. 255, the court says:

"Where the attestation clause to a will is full and complete, it is not always essential that all of the particulars required by the statute to constitute a valid execution of the instrument should be expressly proved."

The surrogate's court found as a fact that this will was duly subscribed by the testator, and that the same was duly declared and published by him to each of the witnesses as his last will and testament, in the manner provided by statute. We are of the opinion that such finding is fully substantiated by the evidence, and that the exceptions present no error justifying a reversal of the decree, but that it should be affirmed, with costs against the appellant, Susan E. Hadcox, personally.

Decree of surrogate's court affirmed, with costs against the appellant, Susan E. Hadcox, personally. All concur.