---

## In re SHULER'S WILL.

(Supreme Court, Appellate Division, Third Department. December 28, 1911.)

Appeal from Surrogate's Court, Montgomery County.

In the matter of the probate of the will of David M. Shuler, deceased, and for the appointment of an administratrix with the will annexed. From a judgment denying probate, the party aggrieved appeals. Affirmed.

Argued before SMITH, P. J., and KELLOGG, HOUGHTON, SEWELL, and BETTS, JJ.

PER CURIAM. Decree affirmed, with costs. All concur, except HOUGHTON, J., dissenting, in opinion in which SMITH, P. J., concurs.

HOUGHTON, J. (dissenting). I think the evidence was sufficient to entitle the will to be admitted to probate. The deceased was a man upwards of 70 years of age, with a wife, but without descendants. He was ill of a disease from which he expected shortly to die, and on the 3d day of October, 1910, he himself wrote and signed a will, quite informal in character, but sufficient to pass all of his property to his wife. Although there was no attestation clause, he evidently had some knowledge of the requirements of the law in the execution of wills; for, after he had signed his name, he put the word "Witness" underneath his signature at the margin of the page. Four days after he had written and signed his will, at 4 or 5 o'clock in the afternoon, his pastor, Mr Buker, called to see him. He was physically weak and in bed, but his mind was clear. He said he knew he was desperately ill and could not recover, and that he and his wife had talked about his funeral, and that he would like to have his funeral conducted by his pastor and in the church, if that was agreeable, and that he had never purchased a burial lot, but that there was room in the plot belonging to his wife's family, and that he would be buried there. The deceased then told his wife to get a paper from amongst his valuable papers, which she did, and brought it to him. The deceased thereupon said it was his last will and testament, that he had written it himself, and that it was the only one he had ever made, and, pointing to his signature, said that he had signed it, and, handing it to the witness, asked him if he would sign it as a subscribing witness, which the witness did in his presence. The deceased then said that he would like either Dr. Klock or Mr. Jump as the other witness, and asked Mr. Buker if he would get one or the other of them to act as a witness, remarking that, "if you attend to it, it will be done." Mr. Buker immediately attempted to find Dr. Klock, but, not being able to do so, went for Mr. Jump, and found that he also was away from home, but would return later, which he did, and together, at about 7 o'clock in the evening, they went to the home of the deceased. The house was a small one, and the bed in which the deceased lay was in one corner of the sitting room, 9 or 10 feet wide, and opposite a door which led into the kitchen. This door was open, and diagonally in front of it and in the kitchen was a table. One sitting at the table, looking through the door, could, see a person lying on the bed, and the deceased, if he was looking in that direction, could see one sitting at the table, and see any paper lying on it. Buker had the will in his pocket, and had explained to Jump that the deceased wanted him to witness his will, and he knew he was going to his residence for that purpose. When they arrived, they did not go into the sitting room, where the deceased was lying on the bed, but into the kitchen; and Jump sat down at the table opposite the door, and directly in front of the bed, and where he could see the deceased, and Buker, holding the will in his hand, stand-

ing near or in the doorway, stated that it was the last will and testament of the deceased, that he had written it himself, that the deceased had pointed to the signature and said that it was his, and that he himself had signed as subscribing witness, and that the decedent desired Jump to sign as the other subscribing witness. Thereupon Jump examined the instrument, saw testator's signature, saw Buker's signature, and signed his own name under the latter. While this declaration was being made as to the will, and about the time Jump signed as a witness, Mrs. Shuler passed from the kitchen to the bedside of her husband with a glass full of water, and came out of the room with it half full. The testator did not speak, and the witnesses are unable to say whether he was awake or saw them, but do testify that he could have seen them if he had looked, and could have seen the will on the table as Jump signed his name as a witness, and that his hearing was acute, and that he could have heard what was said if conscious. There is no evidence as to his physical or mental condition during the night, but he died the following morning about 7 o'clock.

Notwithstanding this unsatisfactory evidence, it seems to me, under the peculiar circumstances disclosed, the will was properly executed. There are no suspicious circumstances connected with its execution, and there is no question but what it bears the signature of the deceased, and no controversy that it was not executed in full compliance with the law with respect to the witness Buker. If it can be assumed that the deceased was conscious at the time it was attempted to be executed with respect to the witness Jump, I think what then took place was sufficient compliance with the statute, in view of what had already taken place with respect to execution by the other subscribing witness. There was certainly enough done to make a good publication and request to sign as subscribing witness. A request to sign as a witness, made by a person superintending the execution of a will, in the hearing of the testator and with his silent permission and approval, is sufficient. Matter of Nelson, 141 N. Y. 152, 36 N. E. 3. I see no reason why the same principle does not apply to an acknowledgment of signature. The witness Buker not only recognized the signature as that of the deceased, but stated that the deceased had pointed to it and said it was his, and that the whole instrument was in his handwriting and that it was his will. This being said in the presence of the testator by a man whom the testator had deputized to superintend the execution of the will, and to a witness whom the testator himself had selected, and who had come to his bedside for the purpose of acting as a witness, was equivalent to a declaration on the part of the testator that it was his signature, provided the testator knew and realized what was taking place. What took place was in the presence of the testator, notwithstanding Jump was 12 or 14 feet away from the bedside, for the door was open, and the two rooms were practically one, and all could see each other. If the testator could have seen the witness and the will as it was being signed (had he been awake), it will be deemed to have been signed in his presence.

Ruddon v. McDonald, 1 Bradf. Sur. 352; Riggs v. Riggs, 135 Mass. 238, 46 Am. Rep. 464.

While the statute makes no exception with respect to holographic wills in its requirements as to execution (Matter of Turell, 166 N. Y. 330, 59 N. E. 910), still in the case of such a will the law allows more inferences to be drawn in favor of its execution than where the will is prepared by another and presented for execution. (Matter of Beckett, 103 N. Y. 167, 8 N. E. 506; Matter of Hunt, 110 N. Y. 278, 18 N. E. 106). The object of the requirements of the statute with respect to the execution of wills is to make certain that the person executing it knew he was executing a will, and not some other instrument. Substantial compliance with the statute in some way or mode indicating that the testator intended to and understood that he was executing a will, and that he desired the witnesses to subscribe their names to it as such an instrument, is all that is required. Matter of Hunt, supra. Where the instrument is not subscribed in the presence of the witnesses, the statute says that the signature must be acknowledged. But in the case of a holographic will, where the testator produces the paper subscribed by him, although such subscription is not made in the presence of the witnesses, if he declares it to be his last will and testament and requests the witnesses to attest it as such, it is sufficient as an acknowledgment of its subscription. Baskin v. Baskin, 36 N. Y. 416; Matter of Akers, 74 App. Div. 461, 77 N. Y. Supp. 643, affirmed on opinion below 173 N. Y. 620, 66 N. E. 1103.

In Matter of Turell, supra, the facts were quite different from those in the case at bar; but in Matter of Carey, 24 App. Div. 531, 49 N. Y. Supp. 32, where the will was held to be well executed, the facts with reference to the publication and request made by the first witness to the second were strikingly similar to the situation presented in the present case.

There is no pretense that the instrument offered for probate was not signed by the testator. There is no charge of fraud or undue influence, or any circumstance pointing to either of them. The respondent relies wholly upon the failure to comply with the statute with respect to the witness Jump.

In view of the fact that it was proved that, about two hours before the witness Jump attempted to witness the will, the testator was alert and clear of mind, and understood that another witness was necessary, and had deputized Buker to get Jump and bring him there for the sole purpose of acting as a witness, I do not think it can be assumed, in the absence of any proof whatever on the subject, that the testator was unconscious or asleep when the declarations referred to were made by Buker in his presence. On the contrary, it seems to me that, in the absence of proof, it must be assumed that he remained in the same alert and conscious condition in which he was proven to have been two hours previously, when Buker left him to bring the other witness. It is a general principle that a situation or condition, not from its nature temporary, proved to exist, is presumed to continue until the contrary is shown. Lunacy being once estab-

lished, the burden is on the party claiming through some act of the lunatic to show that it was done in a lucid interval. And, a return to sanity being proved, the burden is upon the party claiming a relapse into insanity to show that fact. Wright v. Jackson, 59 Wis. 569, 18 N. W. 486.

The testator certainly was not dead, because it was proved affirmatively that he did not die until the next morning. It was not so late at night as to expect him to be asleep, and the fair inference from the testimony is that he took a drink of water while the will was being witnessed, which indicated consciousness.

I realize that the safeguards surrounding the execution of a will. ought not to be broken down; but it seems to me in the present case that there was sufficient to entitle the will to be admitted to probate, and that the decree should be reversed, and the matter remitted to the surrogate, with directions to grant probate, there being no question of fact involved.