(71 South. 134)

No. 21167.

BARTON et al. v. BURBANK et al.

(Feb. 7, 1916. Rehearing Denied March 6, 1916.)

*(Syllabus by the Court.)*

1. ACTION ☞70 — ABANDONMENT OF SUIT — STAY BY INJUNCTION—OPERATION OF STATUTE.

If Act No. 107 of 1898, which provides that a plaintiff is to be considered to have abandoned his suit when he allows five years to elapse without taking any step in its prosecution, could properly be applied in a case where a seizure under executory process is stayed by injunction and the judge delays his decision for five years after the submission of the matter, such application would result in a judgment to the effect that plaintiff in injunction had abandoned his suit, and not plaintiff in seizure, the execution of whose judgment was enjoined, but in such case the statute mentioned is inapplicable to either litigant, since, having submitted their case to the judge, they should not be held responsible for his delay in the discharge of his duty; the idea of the statute being to hold a plaintiff responsible for delay, attributable to his nonaction in and failure to prosecute his suit up to the point at which the court is placed in a position to render judgment.

[Ed. Note.—For other cases, see Action, Cent. Dig. §§ 752–755; Dec. Dig. ☞70.]

2. JUDGES ☞32—RENDITION OF JUDGMENT— SUCCESSOR OF TRIAL JUDGE—EVIDENCE.

Where a case has been tried and submitted, with full opportunity for the cross-examination of witnesses, but the judge before whom it was tried retires from the office before giving judgment, there is no reason why his successor in office should not give such judgment, after hearing argument and without hearing further testimony.

[Ed. Note.—For other cases, see Judges, Cent. Dig. §§ 158–164; Dec. Dig. ☞32.]

3. EXECUTORS AND ADMINISTRATORS ☞438— SUCCESSION — MORTGAGES — ENFORCEMENT AGAINST SUCCESSION—LOSS OF RIGHT.

The holder of a note, secured by mortgage, does not lose the right to proceed against the succession of the maker, contradictorily with the administrator, because of subsequent transactions in which the heirs co-operate with the administrator in borrowing other money from such holder for carrying on the plantation, constituting the main asset of the succession upon which the original mortgage was imposed.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 1765–1785, 1790; Dec. Dig. ☞438.]

Appeal from Twenty-Seventh Judicial District Court, Parish of St. James; C. T. Wortham, Judge.

Action by E. H. Barton and others against E. W. Burbank and others. From judgment for defendants, plaintiffs appeal. Affirmed.

See, also, 114 La. 224, 38 South. 150; 119 La. 224, 43 South. 1014.

Pugh & Himel, of St. James, for appellants. J. Zach Spearing and W. B. Le Bourgeois, both of New Orleans, for appellee heirs of E. W. Burbank.

Statement of the Case.

MONROE, C. J. On March 5, 1894, E. D. Barton, by authentic act, imposed a mortgage upon his St. Clair plantation, in the parish of St. James, to secure a debt of $16,000, due and to become due to E. W. Burbank, and represented by his note for that amount, and in June, 1895, Barton died, leaving a widow in community and a number of children, major and minor, one of whom, Walter I. Barton, was appointed administrator of his estate. In April, 1904, Burbank sued out executory process to enforce payment of a balance of $2,134.15, with interest, etc., then due upon the original debt, and caused Walter I. Barton, administrator, to be served, as required in such proceedings, and he was met by a writ of injunction, issued at the instance of the widow and heirs of E. D. Barton, who, alleging the appointment of the administrator, as above stated, further alleged that, in 1896, with the consent of the court, so far as the minor heirs were concerned, and without opposition, they had gone into possession of the estate of the decedent, that title thereto had become vested in them, that the succession had ceased, that Walter I. Barton, with the full consent and approval of Burbank had been discharged as administrator, and, that he was without capacity to stand in judgment in that capacity.

An exception of no cause of action was filed on behalf of Burbank, and was maintained by the district court, and plaintiffs in injunction appealed from the judgment dismissing their suit, and this court reversed that judgment and remanded the case for further proceedings according to law. Barton v. Burbank, 114 La. 224, 38 South. 150. Burbank then pleaded to the merits, and there was a trial by jury, which resulted in a verdict and judgment in his favor, from which plaintiffs again appealed, and the judgment was again reversed and the case remanded, for the reason that, the stenographer by whom the testimony had been taken having lost his notes before translating and transcribing them, the court found it impossible to review the judgment in the absence of the testimony upon which it was predicated. Barton v. Burbank, 119 La. 224, 43 South. 1014. The case was then again tried before the judge without a jury, and was submitted on December 12, 1908, and no further steps were taken until October 5, 1914, when counsel for defendant in injunction filed a motion alleging the submission, as above stated, further alleging that the judge, then presiding, had ceased to hold that position without having disposed of the case, and praying that it be reassigned for argument upon the record and evidence as already made up and filed, and the reargument was accordingly set for October 21st, from which day it was continued by consent to October 28th, when plaintiffs in injunction moved that the case be stricken from the docket on the ground that "plaintiffs" had allowed five years to elapse without having taken any steps in the prosecution thereof, and with reservation and protest excepted to the jurisdiction and authority of the court to proceed in the matter without hearing the testimony anew, which motion and exception were denied and overruled, and judgment was again rendered in favor of defendant in injunction, and plaintiffs have again appealed.

## Opinion.

[1] The only reference to the motion and exception last above mentioned that we find in the briefs filed in this court on behalf of the appellants is the statement:

"We abandon none of the positions assumed by us in the court a qua, but submit them on the record."

We are of opinion that both motion and exception were properly disposed of by the trial judge. Act 107 of 1898, p. 155, amending and re-enacting article 3519 of the Civil Code, provides that:

"Whenever the plaintiff, having made his demand shall at any time before obtaining final judgment allow five years to elapse without having taken any steps in the prosecution thereof, he shall be considered as having abandoned the same "

If the statute thus quoted could properly be applied to this case, such application would result in a judgment to the effect that appellants had abandoned their suit, since they are the plaintiffs in this proceeding, who have stayed, by injunction, the execution of the judgment, or quasi judgment, which the appellee obtained in 1904 and is still endeavoring to execute. But, we are of opinion that, having submitted their case to the judge, they should not be held responsible for his delay in the discharge of his duty ; the idea of the statute being merely to hold a plaintiff responsible for delay attributable to his nonaction in and failure to prosecute his suit up to the point at which the court is placed in a position to render judgment.

[2] As to the exception, the litigants had had their day in court, with full opportunity to cross-examine each other's witnesses. They came before the successor in office of the judge, who heard the testimony upon terms of perfect equality, and there was no more reason why he should not have decid-

ed the case upon that testimony, than why this court should not do so. Saint v. Martel, 127 La. 86, 87, 53 South. 432.

[3] The petition upon which plaintiffs obtained the injunction contains, among others, the following sworn allegations, to wit:

"That, shortly after the death of E. D. Barton, Walter I. Barton was appointed administrator of said succession, but in 1896 the widow and heirs, with the consent of the court, so far as the minor heirs of said succession were concerned, and without opposition, took possession of all the property left by the said deceased, E. D. Barton, and since then said owners of said property have been, and are now, in quiet, open, and undisturbed possession of said property left by the said E. D. Barton, as widow and heirs, and that the effect of the widow and heirs taking possession of all the succession property of E. D. Barton was to end the succession and vest the title in said heirs and widow. That ever since 1896 there has been no administration of said succession, but that the heirs and widow have been in possession and carried on said property as joint owners thereof. * * * That E. W. Burbank, alleging himself to be a creditor of the succession, * * * has obtained * * * an order of seizure and sale, and has seized and is about to sell the property of your petitioner herein above described [being the property upon which the mortgage had been imposed by E. D. Barton, the then owner]; * * * that the defendant in said proceeding is Walter I. Barton, alleged to be the administrator of said succession, * * * but in truth and in point of fact said succession has long since ceased to exist, and the said Walter I. Barton, as administrator, with the full consent and approval of said E. W. Burbank, has been discharged and released and relieved of all the duties as administrator of said succession; that said Walter I. Barton ceased to be administrator of said succession, and was functus officio when the property of the succession was turned over and delivered to the widow and heirs, with the consent of the said Burbank," etc.

So far as we are informed by the record, not one of the plaintiffs has ever appeared in court to sustain by his, or her, testimony any one of the above allegations. Walter I. Barton, who died before the last trial, testified before the jury on the first trial (as is shown, without attempt at contradiction), to the effect that he administered the property of the succession, in his capacity of administrator, from the date of his appointment to the date of the seizure; that the administration went on after 1896 as it had done prior to that time; that the heirs knew that he was in charge, and that, in dealing with Mr. Burbank—signing checks and drawing on him—he acted as administrator; that in all his dealings with Burbank, he had dealt as the administrator of the succession of E. D. Barton; that the widow and heirs exercised no control over the management of the property, but that he controlled it without consulting them; and that testimony is abundantly corroborated by the testimony of other witnesses and by authentic documents executed by the plaintiffs themselves, the fact being that when, in 1905, E. D. Barton died, his estate was heavily mortgaged to Burbank, and probably owed other debts besides, and he left a widow and several minor children, issue of his last marriage, and several other children, major and minor, by previous marriages. The widow and children of the last marriage were living on the plantation, and Walter I. Barton, a son by a prior marriage, was, perhaps, living there also, though we do not speak with certainty on that point. At all events, he was appointed administrator; and for nearly 10 years thereafter he carried the burden of operating the plantation, keeping it from being sold in satisfaction of the mortgage, and thereby providing a home, with food and shelter, for his father's widow and children. In order to accomplish that, it became necessary to secure the co-operation of the major heirs and of family meetings acting in behalf of the minors; and, even then, as can well be understood, the burden was not easy to carry. Mr. Barton, however, continued to act as administrator up to the time of his death (which occurred after the institution of this suit), and Mr. Burbank (who has also died since this litigation began) alleged in his petition for executory process that, in addition to the balance due upon the note sued on, there is a further balance of about $38,000 due him for money advanced after the death of E. D. Barton, agreeably to certain

acts of mortgage executed by the widow and major heirs, and by tutrices and tutors, authorized by family meetings, and orders of court in behalf of the minors. Those acts were executed in March, 1896, May, 1897, and May, 1898, respectively, and contain recitals such as the following (quoting from the act of May 28, 1898) to wit:

"Which appearers severally declared that Walter I. Barton, the administrator of the succession of E. D. Barton, is carrying on and cultivating the St. Clair plantation, belonging to said succession, for the joint account, interest, benefit, and concern of themselves and said minors; that said administration has no funds belonging to said succession wherewith to defray the expenses of the cultivation of said plantation and for the support of the widow and children of the said deceased, and of Effie Barton, widow of Frank Pike and her minor child, * * * and that the said administration has applied to E. W. Burbank, a commission merchant of New Orleans, for said advances, who has consented to make said advances for the purposes above mentioned," etc.

It is neither alleged nor shown that Walter I. Barton ever filed a final account as administrator, ever applied for his discharge, or that any order of court was ever made granting his discharge; and, though it is alleged, it is not proved, but is disproved, that he ever intimated to Mr. Burbank that he considered himself functus officio, and that his administration was ended. To the contrary, it may be said, after the seizure of the plantation, as the property of the succession, it being desirable that the "administration" and the widow and heirs of the decedent, through the administration, should reap and sell the growing crop, and the law providing that:

"The defendant in execution, whose property has been seized, shall have the right to retain such property in his own possession from the time of such seizure until the day of sale, on condition that said defendant shall execute his bond in favor of the plaintiff in execution," etc. (R. S. 3411)

—an order was made, on application of counsel for "defendant in exception" (should be execution), directing the sheriff to release the seized property "on defendant's furnishing bond," etc.; and a bond was furnished by, and the property released to, "Walter I. Barton, Administrator, Succession of E. D. Barton," who was represented by the same counsel who then and now represented and represent the plaintiffs in injunction, and who drew the petition in which those plaintiffs alleged that Walter I. Barton had ceased to be the administrator of E. D. Barton's succession some eight years prior to the date at which the bond was furnished. Where an administrator has been appointed to a succession, the law contemplates and provides that he shall continue in office until the succession shall be finally wound up; that the heirs shall be put in possession by the judge of the place where the succession is opened, after having cited the administrator; and that the administrator shall then file an exact account of his administration as a condition precedent to the obtention of his discharge. C. C. 1193, 1194, 1195. It may be that, if there be but a single creditor of the succession and it is shown that he has consented thereto, the administrator can obtain his discharge without showing the payment of that debt, and it was upon the theory that the consent of the alleged single creditor was alleged that this court held, upon the first appeal (114 La. 224, 38 South. 150) that plaintiffs' petition disclosed a cause of action. The facts, as now disclosed, are that no such consent was given or contemplated, and that the administrator was never discharged, and never asked to be discharged; from which it follows that he was the proper person to cite in a proceeding to enforce payment of a succession debt, and that the obtention of the injunction herein was an abuse of the process of the court. Nuttall v. Kirkland, 8 Mart. (N. S.) 292; Ledoux v. Breaux, 27 La. Ann. 190; Leonard v. Smith, 28 La. Ann. 810; Freret v. Freret, 31 La. Ann. 506; Dreyfus, Ex'r, v. Richardson & May, 33 La. Ann. 602; Verrier v. Loris, 48

La. Ann. 717, 19 South. 677; Succession of Hart, 52 La. 364, 27 South. 69.

The judgment appealed from is therefore affirmed.