COMPANY A, FIRST REGIMENT NORTH DAKOTA NATIONAL GUARD TRAINING SCHOOL, a Corporation, Appellant, *v.* THE STATE OF NORTH DAKOTA, C. B. Little, Edmund A. Hughes, Mary H. Hughes, Dakota Motor Company, a Corporation, H. P. Goddard, F. A. Copelin, The Red Flame Publishing Company, a Corporation, The North Light Publishing Company, a Corporation, Carl R. Kositzky, J. O. Hendricks, A. M. Landgren, A. Pollock, and All Persons Unknown Claiming Any Estate or Interest in or Lien or Encumbrance upon the Property Described in the Complaint, Respondents.

(— A.L.R. —, 215 N. W. 476.)

**Judges — case left undetermined by judge resigning requires trial de novo.**
Where, upon the resignation of a trial judge, a cause is left undetermined, a succeeding trial judge cannot decide or make findings in the case without a trial de novo on all of the issues.

Opinion filed September 28, 1927. Rehearing denied October 18, 1927.

Judges, 33 C. J. § 103 p. 973 n. 75.

Appeal from the District Court of Burleigh County, *Cooley,* J. Action to determine adverse claims and quiet title. Plaintiff appeals Reversed and new trial ordered.

*F. O. Hellstrom,* for appellant.

"The final element of an equitable estoppel is that the person claiming it must have been misled into such action that he will suffer injury if the estoppel is not declared." 10 R. C. L. 697.

"Ignorance of his legal rights will not prevent one's conduct from working an estoppel if he has full knowledge of the facts." Rogers v. Portland Street R. Co. 100 Me. 86, 60 Atl. 713.

"It is essential to an estoppel by conduct that the party claiming to be influenced by the conduct of another should not only be destitute of information as to the matter to which such conduct relates, but also without convenient and available means of acquiring such information." Atkinson v. Plumb, 50 W. Va. 104, 40 S. E. 586.

55 N. Dak.—57.

"A record which has no existence cannot be established by proof of extraneous facts." Raymond v. Smith (Ky.) 71 Am. Dec. 485.

"An amendment of a judgment can be allowed only for the purpose of making the records speak the truth, and not for the purpose of revising or changing the judgment." Scammon v. Boslett, 118 Cal. 93, 62 Am. St. Rep. 226, 50 Pac. 272.

"A judgment cannot be amended so as to include provisions or directions not proper to have been made at the date of its original entry upon the allegations of the pleading." Scammon v. Boslett, 118 Cal. 93.

*Zuger & Tillotson* and *Dullam, Young & Burke,* for respondents.

The general rule is that the directors or trustees of a corporation hold over until their successors are elected. 7 R. C. L. 427.

"A principal who, after knowledge of the terms of a sale or purchase made by the agent, does not disaffirm, but accepts and enjoys all the benefits thereof, cannot afterwards deny the authority of the agent to make the same upon the terms agreed upon." Fintel v. Cook, 88 Wis. 485, 60 N. W. 788.

ENGLERT, Dist. J. The plaintiff incorporated in 1906, under the name of Company "A," First Regiment North Dakota National Guard Training School. The principal place of business was in Bismarck, North Dakota. Its incorporators were members and ex-members of Company "A," First Regiment North Dakota National Guard. The object of the corporation was to lease or buy suitable grounds for an armory and rifle range, to erect, maintain and own an armory for use by Company "A" as a training school, and place of meeting, to promote and instruct its members in the science and arts of war. The incorporation was perfected under an act of the legislature, chapter 101, 1897, § 1425a, of the 1899 Revised Code.

Lots 23 and 24, in Block 32 of the original plat of Bismarck, North Dakota, were purchased for an armory site. Title to these lots was taken in and deeded to the State of North Dakota. An armory building was erected by Company "A" on these lots. On completion of the armory, the then Governor of the State of North Dakota executed and delivered a deed for said lots to said Company "A." The Company placed two mortgages on the premises, one to the Red River Valley

Mortgage Company for thirty-five hundred dollars, and one to the State of North Dakota for five thousand dollars. The Company incurred and owed additional indebtedness.

Company "A" was an active military organization, with headquarters in said armory until called into service of the government in March, 1917. At that time, there existed a regularly elected and acting Board of Directors, with a captain, who was ex officio president, as provided by the articles of incorporation. In August, 1917, the Company was mustered into the federal service, and became a part of the expeditionary forces overseas.

On August first, 1917, Edmund A. Hughes, one of the defendants, was appointed custodian of Company "A's" property, and he accepted the appointment. On October 9, 1919, a former captain, H. T. Murphy, and L. W. Sperry, as secretary, sold and deeded said lots to Edmond A. Hughes and C. B. Little, two of the defendants herein, for a consideration of fifteen thousand dollars, to be paid by assuming the mortgages mentioned, and other indebtedness of the Company, equal to the difference between such mortgages and consideration. It is contended that Murphy and Sperry had no authority to make the sale and transfer, and that the deed is, therefore, invalid.

Hughes and Little went into possession of the property, and erected buildings and made extensive improvements thereon.

On August 4, 1921, Company "A" commenced this action, under § 8147, Comp. Laws 1913, requiring defendants to set forth their claims, and praying that they be adjudged null and void, and that defendants be decreed to have no estate or interest in said property.

Defendants answered alleging title, and by way of affirmative defense and counterclaim, set forth that they had made improvements thereon to the extent of twenty thousand dollars, and that the plaintiff its officers and stockholders, were guilty of laches, and estopped from questioning defendants' ownership of the property, and praying that title be quieted in them.

Plaintiff replied, denying and placing in issue all the claims of the defendants.

The case came on for trial before Hon. W. L. Nuessle, on the 11th day of May, 1922. On December 30, 1922, he prepared and signed a memorandum decision, in which he expressed the opinion that the

plaintiff could not recover, on account of laches and estoppel, though
the deed was unauthorized, and therefore invalid. In this memoran-
dum decision, he also stated that the plaintiff was not precluded from
showing the actual value of the property on October 9, 1919, and that
if it was worth more than the defendants agreed to pay, that it was
entitled to recover the difference. He also stated that no evidence on
the question of value had been adduced, and for that reason would
either have to grant a new trial, or hear additional testimony on that
subject. On January 2, 1923, in conformity with this memorandum
decision, he signed an order "that the said cause be tried anew, or
that additional testimony be taken to show the value of the property,
on the 9th day of October, 1919." On January 3, 1923, Judge Nuessle
resigned as District Judge, to become a member of the Supreme Court,
to which he had been elected.

On May 2, 1924, the plaintiff moved before Hon. Fred Jansonius,
successor to Judge Nuessle, on the district bench, for an order setting
aside and vacating the memorandum decision and order made by Judge
Nuessle. This motion was denied on August 23, 1924. On a motion
to dismiss the action, Hon. Fred Jansonius, on April 5, 1926, dis-
qualified himself to sit in the case, and it was agreed that Hon. Charles
M. Cooley, Judge of the First Judicial District, be designated to hear
the case. On May 20, 1926, the plaintiff's motion for an order that
the action be tried anew was denied by Judge Cooley, either as a court
or a jury case. He ordered that the case stand as a court case, and
that it be heard on the single question of the value of the property.

The case came on for further testimony before Judge Cooley, on
August 10, 1926, on the lone question of the value of the property, as
of October 9, 1919, over objection of the plaintiff. The plaintiff did
not examine any witnesses on that subject, and offered no testimony.
On the conclusion of defendants' testimony, the court said:

"In the testimony offered here, it is found that the value of the
property did not exceed eleven thousand five hundred dollars, on the
9th day of October, 1919, including the lots and buildings, and all,
so you may draw your order accordingly."

On the 11th day of August, 1926, the court made Findings of Fact.
Conclusions of Law and Order for Judgment, quieting title in de-
fendants, on the ground of laches and estoppel, as determined by Judge

Nuessle, and that the property was worth not to exceed eleven thousand five hundred dollars on date of sale.

The case is now before this court on appeal. Among the errors' assigned by the plaintiff, is:

"Error No. 1.

"The court erred in denying plaintiff's motion for a trial de novo, and entering its order on the 20th day of May, 1926, as it appears upon the judgment roll."

It is the contention of the plaintiff that Judge Cooley had no authority to take up the case where Judge Nuessle left off, and thus make Findings of Fact, Conclusions of Law and Order for Judgment, determining the action, quieting title on the evidence heard before Judge Nuessle, and determining the damages on the evidence adduced before him. It is the claim of the defendants that since Judge Cooley made Findings of Fact covering both ends of the case, that he had jurisdiction. The evidence touching the question of title was heard before Judge Nuessle in 1922. The evidence to complete the case on the damage end was heard before Judge Cooley in 1926.

A succeeding judge may adopt the Findings of Fact made by his predecessor, and order judgment thereon. Edmonds v. Riley, 15 S. D. 470, 90 N. W. 139.

Under the constitution of this state, § 103, the district courts have original jurisdiction of all causes both at law and equity, and appellate jurisdiction as may be conferred by law.

In speaking of a like provision in the Constitution of New York, in Re Carey, 24 App. Div. 531, 49 N. Y. Supp. 32, the court said: "The constitution (art. 6, § 3) contemplates that the judge who has to decide a controverted question of fact should have the advantage of seeing the witnesses, and hearing them give their testimony; and it is a just requirement (one which a sense of propriety commends) that the evidence in a cause, when practicable, be given in the presence of those who are to adjudicate thereon."

We have no statute empowering the trial court, in a contested case, to use the testimony taken before his predecessor, and make Findings of Fact thereon.

As well stated by the court in Putnam v. Crombie, 34 Barb. 232:

"Another judge, or a jury, might find differently upon the same evidence, in regard to the facts."

"The matter of decision and entry of judgment is regulated by statute." Weyman v. National Broadway Bank, 59 How. Pr. 331.

It requires the exercise of judicial judgment.

It is true that in Re Nolan, 71 N. J. Eq. 207, 63 Atl. 618, Justice Magie, sitting as judge prerogative, held that evidence may be heard by one probate judge, and the case be decided by his successor on a transcript of the evidence.

In that case, the Justice, however, noted:

"Moreover, it was stated in the argument, and conceded by counsel of contestant and of the proponents, that Judge Foster should read and consider the evidence taken before Judge Heisley, and transcribed from the stenographer's notes, and use it in determining the contest."

In the case of Barton v. Burbank, 138 La. 997, 71 So. 134, the court, in a very few words, holds that "there was no more reason why he (successor) should not have decided the case upon that testimony, than why this court should not do so." Citing and relying upon one of its prior decisions—Saint v. Martel, 127 La. 86, 53 So. 432.

But in that case, the court dealt with the duty of the trial judge on a reversal by the Supreme Court, and held that another judge than the one from whom the appeal was taken, could enter final judgment, on an order by the Supreme Court for "further proceedings according to law."

Moreover, there is a clear distinction in the hearing and determining of causes by the trial court, a court of original jurisdiction, and the appellate court, a court of appellate jurisdiction, with certain limited exceptions. Our statute provides that the appellate court shall review the record and provides for transcripts of the evidence before this court.

In the case of Labonte v. Lacasse, 78 N. H. 489, 102 Atl. 540, Chief Justice Parsons decided, where the evidence was heard in an equity action for a reformation of a deed, and the case left undetermined by the trial judge, that, "a new trial must be had unless the plaintiff abandons the proceedings."

The Supreme Court of California, Re Sullivan, 143 Cal. 462, 77 Pac.

153, where the evidence was heard before one judge, and the case later decided by another, said:

"The question presented is, however, not one of jurisdiction, but of the erroneous exercise of jurisdiction. A party litigant is entitled to a decision upon the facts of his case from the judge who hears the evidence, where the matter is tried without a jury, and from the jury that hears the evidence, where it is tried with a jury. He cannot be compelled to accept a decision upon the facts from another judge or another jury."

By statute, in the state of Colorado, in an election contest, it is provided that: "The County judge trying such cause shall cause the testimony to be taken in full, and filed in such cause." A case was tried before the presiding judge, a great many witnesses had testified, and their testimony was reduced to writing and filed with the case. His term expired before the case was finished, and his successor was urged to take up the case where his predecessor left off. He ordered, however, a trial de novo. The Court, in Clanton v. Ryan, 14 Colo. 419, 24 Pac. 258, speaking of this statute, said:

"From this language, it is argued with much force that the new judge should have taken up the trial where the retiring judge left it, should have considered the evidence taken by his predecessor as substantive evidence in the cause. In view of the hardship resulting from mistrials, which are liable to occur in cases of this kind, especially where a change of county judges follows, a general election of county officers, we might be inclined to hold that such was the purpose and intent of requiring the testimony to be thus preserved, were it not that the very next sentence of the act required that 'the trial of such causes shall be conducted according to the rules and practice of the county court in other cases.' By the words 'other cases' must be understood ordinary civil actions. It certainly is not 'according to the rules and practice' in the trial of ordinary civil actions before a court of record for one judge to hear the evidence, or part thereof, orally, and then for another judge to render a finding and judgment upon such evidence, however perfectly the same may have been preserved. It is more probable that the object of requiring the testimony to be preserved was for convenient reference afterwards, or for use on appeal, or as

a deposition in case a second trial should be had when witnesses should have died, or removed from the county."

The consideration of the case by Judge Nuessle had never reached the point of actual decision. In his memorandum decision, he expressed the opinion that the defendants should have the title quieted in them by reason of the laches and estoppel of the plaintiff. He was also of the opinion that the evidence was not sufficient for him to dispose of the case, and therefore ordered a new trial, or the taking of further testimony on the question of damages. The case had not, therefore, reached the point where Judge Nuessle determined the issues involved.

As said by·the Supreme Court of Indiana, in Wainwright v. P. H. & F. M. Roots Co. 176 Ind. 682, 97 N. E. 8:

"A party to an action is entitled to a determination of the issues by the jury or judge that heard the evidence, and where the case is tried before the judge, and the issues remain undetermined at the death, resignation, or expiration of the term of such judge, his successor cannot decide, or make findings in the case, without a trial de novo."

Judge Cooley made findings on the most important issue in the case, that of affecting the title, on the evidence heard before Judge Nuessle. He had not heard the witnesses testify on the subject. He adopted Judge Nuessle's conclusion therefrom. Not having any statute providing for such procedure, it was an erroneous exercise of judicial authority.

It follows from what has been said that thus far in the consideration of this case in the district court and in this court there has been no decision upon the question of title which includes questions of estoppel, laches, etc., and that the judgment must be reversed and a new trial ordered on all issues.

BIRDZELL, Ch. J., and BURR and CHRISTIANSON, JJ., and PUGH, Dist. J., concur.

NUESSLE and BURKE, JJ., did not participate; HON. M. J. ENG-LERT, Judge of the First Judicial District, and HON. THOMAS H. PUGH, Judge of the Sixth Judicial District, sitting in their stead.