## LOTZ v. POLIZZÓTTO.
### SAME v. POLIZZOTTO et al.
#### Nos. 1460, 1461.

Court of Appeal of Louisiana. First Circuit.
June 14, 1935.

Carville & Carville, of Plaquemine, and Fred G. Benton, of Baton Rouge, for appellant.

Borron, Owen & Borron, of Plaquemine, for appellees.

ELLIOTT, Judge.

This is a controversy concerning liability for the fees of an expert examiner of questioned documents, employed under an agreement of the parties in the above consolidated suits. The fee with expense added was fixed at $569.12 and taxed as cost to be paid by Mrs. Marie Hebert Lotz and John T. Silmon, defendants in rule. The amount covered his fee in both cases. John T. Silmon has appealed. Mrs. Lotz did not appeal.

The record shows that Mrs. Marie Hebert Lotz, testamentary executrix of the estate of Lewis B. Hart, acting in her said capacity, instituted suit No. 891 against Samuel Polizzotto on a note for $26,000 and another, No. 892, against Sam Polizzotto and V. Polizzotto & Sons on a note for $24,000; both filed May 26, 1928.

Acting under the provisions of Act No. 111 of 1926 defendants in both suits appeared on June 2, 1928, and, suggesting to the court that the suits were based on alleged promissory notes to which a defense of forgery would be made, and that it would be necessary for them to incur heavy expense in employing an expert examiner of questioned documents, they each obtained from the court an order calling on Mrs. Lotz to show cause why they should not be authorized by the court to employ an expert examiner and why she should not be ordered to furnish bond for cost.

The court, acting on their respective motions, signed an order June 2, 1928, requiring Mrs. Lotz to show cause on June 12, 1928, why bonds should not be furnished as prayed for. If any answer was filed to these rules or action taken by the court thereon, the record does not show it, but the record shows that on November 16, 1928, she did furnish a bond in the sum of $500 in each case with John P. Silmon as surety. These bonds were made payable to John Omer Hebert, clerk of court, and each carries the usual conditions stipulated in bonds for cost.

The defendants then answered plaintiff's suit against them. In each suit it is denied that defendants signed the notes, and alleged that their purported signatures thereto were forgeries, and, by supplemental petitions, demands in reconvention were set up against the plaintiff. The cases were consolidated by agreement of the parties, and, after a number of continuances, were, on motion of defendants, set for trial to take place on July 1, 1930.

When called, both cases were, on plaintiff's motion, discontinued and dismissed at her cost; the court granting her motion without prejudice to the reconventional demand which was left pending against her.

Defendants, exercising their reserved rights, prosecuted their demand and obtained a judgment in reconvention against her in each case, holding that the notes sued on were forgeries and ordering that as such they be canceled. The judgment in reconvention does not expressly say who is to pay the cost, but under Code Practice, art. 551, Mrs. Lotz, having been cast, was thereby made liable for the cost. Samuel Polizzotto and V. Polizzotto & Sons paid the fees of J. Fordyce Wood, employed by them as expert, and then obtained from the court an order calling on Mrs. Lotz and John T. Silmon, her surety, to show cause why the fee of said J. Fordyce Wood should not be fixed and taxed as cost against them, making good the amount Movers had paid Wood on said account.

Mrs. Lotz and Silmon appeared and urged as an exception thereto that the rule set up no right or cause of action against them, which was overruled. Defendants in rule then appeared, and, each answering the rule, urged a number of defenses against their alleged liability.

Silmon urges that he is not liable because the cases were consolidated without his consent. The consolidation was agreed to and ordered, no doubt, for the purpose of minimizing the cost, and the cost was made less by the consolidation. The consent of a surety on a bond for cost is not necessary in order to enable the parties to agree to, and the court to order, the consolidation, a mere incident preparatory to trial on the merits. The position of the surety was not altered nor prejudiced by the consolidation, but thereby bettered, so he has no ground for complaint on that account. He contends that he is not liable because the cost was not itemized. The note of testimony taken on the trial of the rule to fix and tax the fee shows how the amount was reached and made up. Our examination of the testimony satisfies us that the itemization and proof were sufficient, and that Silmon had no reason for complaint on that account.

He contends that J. Fordyce Wood was not appointed by the court and that he therefore cannot avail himself of the provisions of Act No. 111 of 1926 to have his fee taxed as cost on that account.

The bonds each say on their face: "Plaintiff in the above numbered and entitled suit has under Act No. 111 of 1926 been by order of the court required to furnish bond for such cost as may accrue or be taxed in said case."

The act referred to provides: "That in all cases the surety for costs shall be considered a party to such suit or proceeding and shall be condemned for the amount of costs recoverable in solido with the principal if cast in the final judgment in such proceeding." Section 2.

The record shows the employment of J. Fordyce Wood as an expert, the work done by him as such, preparing for the trial on the merits, and the judgment in reconvention obtained by defendants against the plaintiff, establishing the forgeries.

Upwards of two years after the bonds were filed, but about six months before the suits were discontinued and dismissed, the parties entered into an agreement which, signatures omitted, reads as follows:

"Mrs. Marie Hebert Lotz v. Sam Polizzotto
"Mrs. Marie Hebert Lotz v. Sam Polizzotto et als.
"Nos. 891–892
"18th Judicial District of the State of Louisiana, Parish of Iberville.

"Stipulation:

"It is agreed and understood between the attorney for the plaintiff and the attorney for the defendant in the above numbered and entitled cases, that any handwriting expert employed by the parties shall have access to the original notes involved in these suits for the purpose of determining the authenticity of the signatures thereto, without however, removing the notes from the office of the clerk of court at Plaquemine, Louisiana. And in making said examination without the right to use chemicals, sharp-pointed instruments or any other article or thing which might in any sense change or otherwise affect said notes. It is further agreed and understood that in accordance with the laws of this state governing such matters, the fees of any such experts shall be fixed by the court in the legal manner and shall be assessed as part of the cost to be paid by the party cast, it being understood however that this clause is in no sense to change the law which governs the fixing of expert fees, either as to the number of witnesses by law or the amount. Done and signed at Baton Rouge, La., this ——— day of January 1930."

How it came about that this agreement bears such a late date is not explained, but we feel that the record justifies the presumption that it relates back to, and takes the place of, the order which the parties to the suits on the notes anticipated the court would have entered had it acted on the rule instituted June 2, 1928. This agreement covers all the matters that the parties deemed essential on the subject of obtaining expert testimony in the cases. It is in harmony with the law, and was legally entered into: "Agreements legally entered into have the effect of laws on those who have formed them," etc. Civil Code, arts. 1901 and 1945.

Under the agreement, plaintiffs in rule had the right to employ J. Fordyce Wood as an expert concerning the purported signature to the notes sued on, and the present defense of Silmon that he is not liable on the bond he signed because Wood must have been employed under the agreement quoted, instead of under an order of the court authorizing, is, to our mind not good, and cannot relieve him from responsibility.

It is contended that Mr. Wood was not summoned to testify in the case. Under the agreement which is the law of the case as between the parties, he did not have to be summoned. He came, examined the documents, and made the necessary data to enable him to testify on the question at issue, which was sufficient to entitle him to reasonable compensation.

It is urged that he was not sworn as an expert in the case. Mrs. Lotz, principal in the bond, forestalled this formality by voluntarily moving for the discontinuance and dismissal of the suits before any witnesses were sworn. But it was necessary for him to examine the notes before the trial and obtain the information necessary to enable him to testify in the case had it been taken up.

Another contention is that the amount allowed is exorbitant. Plaintiffs in rule first endeavored to employ an expert residing in New Orleans, but the party informed them that he had been already employed by defendants in rule. Plaintiffs in rule then employed Mr. Wood, living in the city of Chicago. The evidence shows that it was necessary for Mr. Wood to leave his office in Chicago and come to Plaquemine in order to do the work required of him. The time he was absent from his office and the expense of the trip was, we think, properly added to the amount to which he is entitled for his professional services. The amount allowed has received our consideration. We agree with the lower court that the amount allowed is not exorbitant.

It is said that Mr. Wood did not contribute anything to the discontinuance of the suits. Mrs. Lotz was presumably moved to the discontinuance by failing faith in the signatures on which she relied, and plaintiffs in rule worked to that end through Mr. Wood. We think it may be safely presumed that Wood, by his work, contributed to the discontinuance.

Defendant in rule interposes a defense against the admissibility of the testimony of J. Fordyce Wood taken by commission, used on the trial of this rule to tax cost, that its materiality was not sworn to by the parties taking the testimony. The Code Practice, art. 436, provides that when the testimony of a witness residing out of the state is to be taken, its materiality must be sworn to by the party taking the testimony. In taking the testimony of Wood, its materiality was sworn to by the attorney representing plaintiffs in rule. Under the Code of Practice, this, in our opinion, was sufficient, but suppose otherwise, we think the language of the Code of Practice on that subject is now to be taken in connection with the provisions of Act No. 27 of 1926 on the subject of the verification of pleadings by attorneys for the parties. In this case the verification was sufficient. In Ducre v. Bagur, 165 La. 307, 115 So. 572, the Supreme Court considered a matter of this kind.

The judgment appealed from is in our opinion correct.

Judgment affirmed; John T. Silmon, defendant in rule, to pay the cost of the appeal. The cost in the lower court is to be paid as ordered in the lower court.

LE BLANC, Judge (concurring).

The principal defense on the part of defendants in rule is that the fees of the expert, J. Fordyce Wood, cannot be taxed as costs, for the reason that he was not in fact a witness in the case on the trial of the main issue; he having never actually testified. The contention is that, in order to receive additional compensation as an expert, under the provisions of Act No. 19 of 1884, he must have been called to testify in court on the matters on which he rested his expert opinion.

The defendants, in the trial of their reconventional demands to have the notes declared forgeries and canceled, supported their case with the report of the expert hired by them to investigate the signature to the notes. There is no specific mention of an offer of the report in evidence to be found in the record, unless it be contained in the shorthand notes taken at the trial of the reconventional demands on October 24, 1930. These notes are found in an envelope in the record in one of the suits. They were never transcribed. I find, however, that the report of J. Fordyce Wood, the expert, bears a filing mark of the clerk of the court of the same date, October 24, 1930, and that, in my opinion, can hardly be taken to mean anything else but that it was offered in evidence to substantiate the reconventional demands and to prove the forgeries. That being so, the testimony of this expert, in the form in which it is by way of a report, and unobjected to, is in the record, and no doubt was strongly relied on by the district judge in reaching the conclusion that the notes were forged. With this in mind I now refer to the provisions of Act No. 19 of 1884 relating to the compensation of expert witnesses. The pertinent section reads as follows: "Witnesses called to testify in Court only to an opinion founded on special study or experience in any branch of science, *or to make scientific or professional examinations, and to state the results thereof*, shall receive additional compensation. * * *" (Italics mine.)

I take that provision to mean that such witnesses can claim the additional compensation in either of two cases: First "when called to testify in Court, etc.," and, second, "when called to make scientific or professional examinations and to state the result thereof." The disjunctive "or" used after the comma indicates as much. Now, when the statute provides additional compensation for a witness who is called on to state the results of scientific or professional examinations made, does it mean that he must personally appear in court and make that statement, or can the statement be made in the form of a report and introduced in evidence? I do not see why, in certain cases, like the present for instance, it should be imperative for the expert to have to be placed on the stand to make his statement in order to be entitled to his expert witness fee. In this case, counsel for the plaintiff in rule had been advised that the defendants in rule did not intend to, as in fact they did not, take part in the trial of the reconventional demands. They had been given every opportunity by the district judge to protect their rights against the trial of that demand by applying to the Supreme Court for writs, but they did nothing. Under the circumstances, knowing that defendant's counsel would not take part, was not counsel for plaintiff in rule justified in saving the expense of having Mr. Wood brought back from Chicago to place him on the stand in court in Plaquemine simply to state orally what was

contained in his report in writing; and which report was a complete statement of the result of his examination and investigation? I believe that the interpretation asked for by counsel for defendants in rule is too restrictive, and that the statute is meant to apply to just such a case as this; that, where the party who has availed himself of the provisions of the law which grants him the right to employ expert witnesses, and the other party, apprehending his defeat, makes it unnecessary for him to summon the expert on the witness stand, which might entail considerable more expense, the report of the expert stands as the statement of the result of his examination and constitutes expert testimony which entitles him to the compensation provided for in the act.

With these additional reasons, I respectfully concur in the decision herein rendered.