306 So.2d 869 (1974)
Succession of Annie Laurie Roumain MOODY.
No. 10042.
Court of Appeal of Louisiana, First Circuit.
December 16, 1974.
Rehearing Denied February 10, 1975.
Writ Refused April 11, 1975.
*871 Joseph A. Gladney, Baton Rouge, for Ben Roumain Succession.
L. Michael Cooper and Victor A. Sachse, Baton Rouge, for defendant-appellee Thomas Franklin Moody.
Bailey E. Chaney, Baton Rouge, for Mrs. Yvonne Roumain Smith.
Before LOTTINGER, COVINGTON and BAILES, JJ.
COVINGTON, Judge:
This appeal from a judgment taxing as costs against the defendant in rule, Succession of Benjamin Roumain, certain expert witness fees is yet another phase of the lengthy litigation thus far arising from the Succession of Annie Laurie Roumain Moody. Prior appellate litigation is to be found in the following reported decisions: Succession of Moody, 227 La. 609, 80 So. 2d 93 (1955); Succession of Moody, 229 La. 30, 85 So.2d 20 (1955); Succession of Moody, La.App., 149 So.2d 719 (1 Cir. 1963), and Succession of Moody, 245 La. 429, 158 So.2d 601 (1963).
This litigation commenced when the validity of the last will of Annie Laurie Roumain Moody naming her husband, Thomas Franklin Moody, her universal legatee was attacked by Benjamin Roumain, her uncle. The grounds of the attack were that the will was a forgery and the testatrix lacked testamentary capacity. The attack was unsuccessful. The judgment of the trial court upholding the will and casting all costs against Benjamin Roumain was affirmed by the Supreme Court. See Succession of Moody, 227 La. 609, 80 So. 2d 93 (1955).
Thereafter, Thomas Franklin Moody, who had been the successful litigant, filed a rule to tax costs against Benjamin Roumain and the surety on the cost bond and the appeal bond put up in the suit. The trial of the rule on its merits resulted in a judgment on May 27, 1960, in favor of the plaintiff in rule. However, while the matter was under submission to the court for a decision, Benjamin Roumain, the principal, died on November 9, 1958. The death of the principal necessitated an amendment in the judgment on the rule to the effect that costs were taxed against the surety alone, limited to the amount of his responsibility under both bonds. The amended judgment reserved all rights of the plaintiff in rule against the succession of Benjamin Roumain. On appeal, the Court of Appeal reduced the judgment to the amount of the appeal bond for the reason that the appeal bond had superseded the cost bond. See Succession of Moody, La.App., 149 So.2d 719 (1 Cir. 1963).
The Supreme Court granted certiorari limited to the question "whether a judgment could be granted against a surety on an appeal bond without a showing that all remedies had been exhausted against the principal or his estate." Holding that the plaintiff in rule first had to exhaust his remedies against the principal or his estate, the Supreme Court remanded the case for proper substitution of the legal representative of the succession of Benjamin Roumain, acknowledging that "all of the rights *872 of Thomas Franklin Moody against the Succession of Benjamin Roumain were reserved." See Succession of Moody, 245 La. 429, 158 So.2d 601 (1963).
Pursuant to this order, the plaintiff in rule filed a motion for substitution in the rule to tax costs and caused the motion to be served on Yvonne Roumain Smith, the sole heir of Benjamin Roumain. The Succession of Benjamin Roumain has been cited to appear in accordance with law and has been represented by counsel at all stages of these proceedings. See LSA-C. C.P. Arts. 801-804.
During the course of the instant proceedings, two procedural questions were raised which must be answered. First, has the rule to tax costs been abandoned for five-years' non-prosecution? Second, was the prior basic judgment dismissing the attack upon the last will of Annie Laurie Roumain Moody and casting all costs against Benjamin Roumain a money judgment which prescribed for ten-years' non-revival?
The first question is whether the rule to tax costs should be dismissed on the ground of abandonment for failure to prosecute the cause during a five-year period, pursuant to LSA-C.C.P. Art. 561 (formerly LSA-C.C. 3519).
The pertinent portion of Article 561 of the Code of Civil Procedure provides:
"An action is abandoned when the parties fail to take any steps in its prosecution or defense in the trial court for a period of five years."
This article has been judicially interpreted as calling for the certainty of some formal action in the judicial proceeding itself, which is intended to hasten the suit to judgment, as necessary to interrupt the running of the five-years' inaction. See Sliman v. Araguel, 196 La. 859, 200 So. 280 (1941).
Defendant in rule's position is that the rule was abandoned since no step was taken by the plaintiff in rule to prosecute the rule from November 9, 1958 (the date of the death of Benjamin Roumain) until May 1, 1964 (the date of the motion for substitution of the legal representative of the Succession of Benjamin Roumain).
There is no basis for defendant in rule's position. The minutes of the trial court show that several actions were taken in the instant proceedings during the alleged period of inactivity. We need direct our attention for the moment but to one such action. There is a motion filed by the plaintiff in rule in the instant proceedings on June 21, 1960, which had the effect of interrupting the running of the five-year period of inactivity. This motion alleged the death of Benjamin Roumain as having occurred in November, 1958, and prayed for judgment against the surety alone. In the said motion the plaintiff in rule moved that all his rights against the succession of Benjamin Roumain be reserved to him. This motion was filed after the trial court's written reasons for judgment, in which judgment was rendered against both the principal and the surety. These written reasons for judgment were signed and filed on May 27, 1960. When the judgment was signed on June 21, 1960, plaintiff in rule's motion was granted, specifically reserving his rights against the succession of Benjamin Roumain. We believe that this motion was a formal action in the judicial proceeding itself for the purpose of hastening the instant proceedings to judgment. See Watt v. Creppel, La.App., 67 So.2d 341 (Orl.1953); Evergreen Plantation, Inc. v. Zunamon, La.App., 272 So.2d 414 (2 Cir. 1973); see also Note, Abandonment of Suit, 26 La.L.Rev. 719 (1966).
It is also contended on this question that the rule to tax costs can not be considered for the purposes of interrupting the running of the five-year period of inactivity, because the judgment rendered against the surety was annulled by the Supreme Court.
This issue was dealt with in the case of Wilson v. King, 233 La. 382, 96 So.2d 641 (1957), wherein the plaintiff had filed suit *873 on October 2, 1940, and obtained a money judgment by default on November 11, 1940. When the plaintiff brought suit to revive the 1940 judgment on June 26, 1950, the defendant defended the action on the ground that he had not been legally cited in the original action. On appeal the court, finding that the defendant had not been legally cited, dismissed the action for revival and declared the default judgment in the original action to be a nullity. Thereafter, the plaintiff obtained personal service on the defendant in the original action on November 10, 1955. The defendant filed a plea of abandonment, protesting that more than five years had elapsed since the taking of any "valid" step in the prosecution of the suit.
The Supreme Court, in overruling the plea of abandonment, said:
"It is apparent from the facts in this case that this article of the Civil Code (now LSA-C.C.P. Art. 561) is not applicable. It would indeed be unreasonable to apply this article where the plaintiff has done everything in his power to recover under his suit. It is obvious from a reading of the article itself that it was meant to apply to a situation where suit was filed and no steps were taken for five years, but it was never intended to apply to a case where a suit was prosecuted to final judgment even though that judgment was afterwards set aside."
We agree with the trial court that the plaintiff in rule made every reasonable attempt to prosecute and recover in his suit against Benjamin Roumain and his surety. The law does not strictly insist that a party take a "right" step in order to maintain the viability of his suit. He is only required to take an "active" step in the judicial proceeding itself aimed at moving the suit along toward a judgment. See authorities collected in Comment, The Abandonment of a SuitIts Effect on Prescription, 22 Tul.L.Rev. 504, 508 (1948).
Perhaps it should be added that the presumption of abandonment is not conclusive. A party is excused from its application if he can show that his failure to prosecute was due to circumstances beyond his control. See Burke v. State Farm Mutual Automobile Insurance Co., La.App., 234 So.2d 432 (1 Cir. 1970). Such circumstances do exist in the instant proceedings. The rule to tax costs had been submitted to the trial court prior to the death of Benjamin Roumain.
Where a case has been submitted to the court for decision, Article 561 of the Code of Civil Procedure is inapplicable to either party to the action, because the delay is attributable to the court rather than the parties. Pertinent is the expression of the Court in Barton v. Burbank, 138 La. 997, 71 So. 134 (1916), as follows:
"But, we are of the opinion that, having submitted their case to the judge, they should not be held responsible for his delay in the discharge of his duty; the idea of the statute being merely to hold a plaintiff responsible for delay attributable to his nonaction in and failure to prosecute his suit up to the point at which the court is placed in a position to render judgment."
See also Bryant v. Travelers Insurance Co., La., 288 So.2d 606 (1974).
Indeed, the viability of this cause was recognized by the latest Supreme Court decision in these proceedings, on December 16, 1963, when the Court expressly recognized that "all of the rights of Thomas Franklin Moody against the Succession of Benjamin Roumain were reserved." See Succession of Moody, 245 La. 429, 158 So. 2d 601 (1963).
Thus, we hold that the rule to tax costs has not been abandoned, and that defendant in rule's motion to have the suit declared abandoned was properly dismissed by the trial court.
*874 Next, turning to the second procedural question raised in these proceedings. A plea of prescription was filed contending that the judgment dated May 19, 1954, was a money judgment which had not been revived within ten years of its rendition or signing, as required by Article 3547 of the Civil Code.
At this point we need only to state the facts necessary to determine the issue of prescription. On May 19, 1954, a judgment was signed in favor of Thomas Franklin Moody against Benjamin Roumain upholding the last will of Annie Laurie Roumain Moody and casting all costs of the suit against Benjamin Roumain. This judgment was affirmed by the Supreme Court on March 21, 1955. Thomas Franklin Moody, the plaintiff in rule, filed a rule to tax the costs of the suit against Benjamin Roumain, the principal, and J. P. Roumain, the surety. The rule resulted in a judgment against the surety alone, the principal having died prior to the judgment. This judgment was later reversed by the Supreme Court and the cause was remanded to the trial court for further adjudication.
LSA-C.C. Art. 3547, the applicable article of the Code, provides in pertinent part:
"A money judgment rendered by a court of this state is prescribed by the lapse of ten years from its signing, if rendered by a trial court ..."
It is a "money judgment" which is prescribed under this codal article. We are, therefore, called upon to determine if the prior basic judgment dismissing the attack upon the last will of Annie Laurie Roumain Moody can be, or is, classified as a "money judgment."
The characteristics of a money judgment may be ascertained from Article 3321 of the Civil Code, Articles 628 and 641 of the Code of Practice, and Articles 2031 and 2291 of the Code of Civil Procedure, to be as follows: A money judgment is one which orders the payment of a sum of money and which may be executed under a writ of fieri facias.
In discussing the characteristics of a money judgment, the Court in Liquidator of the Clinton and Port Hudson Railroad Co. v. Lee, 22 La.Ann. 287 (1870), said:
"This is not such a judgment as would create a judicial mortgage on being recorded in the mortgage office, nor is it a judgment for a sum of money entitling the party in whose favor it was rendered to the writ of fieri facias; it simply directs that certain things shall be done."
See also Cochran v. Violet, 37 La.Ann. 221 (1885).
Tested by these characteristics, we find that a judgment sustaining the validity of a last will and casting the costs against the unsuccessful litigant is not a money judgment. Hence, such a judgment does not require revival for its continued existence. See Comment, Revival of Judgments, 20 La.L.Rev. 134 (1959).
We have examined the authorities cited by the defendant in rule and find them inapplicable.
We are in accord with the trial court's finding that the May 19, 1954 judgment "is not a final money judgment and need not be revived."
We now proceed to a consideration of the main question presented in the instant proceedings. Are the certain medical and handwriting expert witness fees incurred by the plaintiff in rule in the defense of the basic action brought by Benjamin Roumain to set aside the last will of Annie Laurie Roumain Moody properly taxable as costs in this rule against the defendant in rule, the Succession of Benjamin Roumain?
The statutory basis for fixing expert witness fees is found in LSA-R.S. 13:3666, which provides in part as follows:
"A. Witnesses called to testify in court only to an opinion founded on special *875 study or experience in any branch of science, or to make scientific or professional examinations, and to state the results thereof, shall receive additional compensation, to be fixed by the court, with reference to the value of time employed and the degree of learning or skill required."
It is necessary to relate some of the facts leading up to the present proceedings in order to put this rule to tax costs in proper perspective. The basic suit attacking the last will of Annie Laurie Roumain Moody ended in a favorable decision for the present plaintiff in rule and the judgment taxed all costs against the unsuccessful litigant. The attack upon the will in the basic suit was identical to two previous attacks which were non-suited just prior to trial. All of the attacks charged forgery and testamentary incapacity. Due to the apparent seriousness of the charges, the plaintiff in rule employed Francis D. Murphy and Albert D. Osborn, both qualified handwriting experts from New York City, to prove that the olographic will was wholly written, dated and signed by the testatrix. They spent a considerable amount of time in preparation for trial and came to Baton Rouge prepared to testify in court and give their reports and opinions concerning the will. On the day of the trial the specific charge of forgery was dismissed from the suit by amendment of the petition. However, it was not until on April 13, 1954, the fifth day of the fourteen-day trial, that the charge of forgery definitely ceased to be an issue in the suit, when it was stipulated by the parties that the olographic will was in the handwriting of the testatrix. Under the circumstances, it was necessary for the plaintiff in rule to have the handwriting experts available to testify.
On the remaining charge, testamentary incapacity of the testatrix, the suit was tried at some length. Concerning this issue, five medical experts, all eminent specialists in the field of internal medicine, testified on the trial. Dr. Philip H. Jones and Dr. Norton W. Voorhies remained in Baton Rouge, away from their practices in New Orleans, for two full days. They spent most of the time on the witness stand. Dr. Emmett Lee Irwin, who also practices in New Orleans, came to Baton Rouge for the trial. Although Dr. Irvin testified only for a brief period of time, he was required to be available as a witness for one day. Dr. J. E. Toups and Dr. Frank J. Jones, both of Baton Rouge, also testified in court. Dr. Toups testified for part of one morning and afternoon, and was away from his practice for the entire day. Dr. Frank Jones testified on four separate occasions, taking up two full days and parts of three other days, which caused him to be away from his practice for three days and parts of two more days.
LSA-R.S. 13:3666 has generally been interpreted as requiring the expert witness to actually testify in court for the expert fees to be taxed as costs. See Succession of Franz, 242 La. 875, 139 So.2d 216 (1962).
In the instant proceedings the medical experts did testify in court, so with respect to the medical experts this requirement has been met. However, the two handwriting experts did not testify in court. Therefore, unless they come within the ambit of some exception to the general rule, their expert fees can not be taxed as costs.
There are several cases beginning with Lotz v. Polizzotto, La.App., 161 So. 901 (1 Cir. 1935), and including Succession of Moody, 229 La. 30, 85 So.2d 20 (1955), which recognize an exception to the general rule that only the expert fees of expert witnesses who actually testify in court are taxable as costs, where the unsuccessful litigant has foreclosed the testimony of the expert witness by dismissal of the suit, thus making compliance with the statute impossible.
In the Polizzotto case, supra, the basic action was to collect payment on promissory notes, to which the defense was forgery. To prove his defense the defendant was required to employ a handwriting expert *876 who examined the notes and was prepared to testify. Then the plaintiff dismissed the action as of non-suit and was cast for costs. On the rule to tax costs, the contention was made by the unsuccessful litigant that since the handwriting expert had not testified, his fees could not be taxed as costs. The Court answered this contention by saying:
"It is urged that he was not sworn as an expert in the case. Mrs. Lotz, principal in the bond, forestalled this formality by voluntarily moving for the discontinuance and dismissal of the suits before any witnesses were sworn. But it was necessary for him to examine the notes before the trial and obtain the information necessary to enable him to testify in the case had it been taken up."
In Succession of Moody, 229 La. 30, 85 So.2d 20 (1955), the testimony of the handwriting experts had been taken by deposition but the depositions were not used on the trial, the unsuccessful litigant having voluntarily dismissed his suit attacking the olographic will prior to the date fixed for trial.
The Court said: "We think that counsel for the plaintiff is in error in his contention that the costs of taking the depositions of the several experts and the expenses in connection therewith are not taxable as costs because the depositions were not used on the trial.... the use of the depositions was foreclosed by plaintiff's action in dismissing his own suit (which was done over defendant's objection) to avoid going to trial on the merits on the date fixedthe following day."
The Moody case was followed in the case of Doug Ashy Lumber, Inc. v. Ducharme, La.App., 185 So.2d 848 (3 Cir. 1966):
"An exception to the general rule, that only such depositions which are `used on the trial' are taxable as costs, is found in the case of Succession of Moody, 229 La. 30, 85 So.2d 20, where it was held that the losing party had made compliance of the statute impossible by dismissal of the suit before the depositions could be used at the trial."
In the instant proceedings neither handwriting expert actually testified at the trial of the will contest, although they were available to testify and their depositions had been taken. We believe it can be safely presumed that the work of the handwriting experts led to the dismissal of the forgery allegation and to the stipulation that the olographic will was in the handwriting of the testatrix. This dismissal of the forgery charge and the subsequent stipulation foreclosed the use of the testimony or the depositions of the expert witnesses, and made compliance with the statutory requirement of in-court testimony impossible. See Lotz v. Polizzotto, supra; Succession of Moody, supra, and Coine v. Smith, La. App., 100 So.2d 902 (1 Cir. 1958).
Thus, we find the exception to the general rule, as stated in the Moody case, supra, to be applicable to these proceedings before us on appeal. Since the dismissal of the forgery charge, together with the stipulation, prevented the calling of the handwriting experts to testify in court or the use of their depositions on the trial of the case, the plaintiff in rule is not precluded from recovering these expert fees as costs.
After having determined that the expert witness fees herein are properly taxable as costs against the defendant in rule, we must now consider the trial court's fixing of the amount of compensation to be awarded for each expert witness.
The applicable statute, LSA-R.S. 13:3666, provides for the fixing of expert fees by the court depending on the "value of time" and the "degree of learning or skill" of the expert witness.
As stated by the Court in Coine v. Smith, La.App., 100 So.2d 902 (1 Cir. 1958):
"Under LSA-R.S. 13:3666, the compensation of expert witnesses is to be fixed *877 by the court `with reference to the value of the time employed and the degree of learning or skill required.' Not only time actually spent testifying, but time spent on preparatory work therefor can be taken into consideration."
See also Wappler v. Braucht, La.App., 209 So.2d 603 (2 Cir. 1968).
In Pickett v. Norwich Union Fire Insurance Society, La.App., 119 So.2d 566 (1 Cir. 1960), the Court found:
"... it is appropriate in fixing expert fees to take into consideration not only the time the experts are on the stand, but also the time they are required to take away from their regular duties to stand by near the courtroom to be ready to testify at the convenience of the court."
For a general discussion about fixing costs, see Comment, Taxing of Substantial Litigation Expenses in Louisiana, 41 Tul. L.Rev. 657 (1967).
Although the jurisprudence indicates certain factors, such as time spent testifying, time spent in preparatory work for trial, time spent away from regular duties while waiting to testify, the extent and nature of the work performed, and the knowledge, attainments and skill of the expert, that the court may consider in arriving at a proper expert fee, the fixing of expert fees is largely within the discretion of the trial court. Borenstein v. Joseph Fein Caterers, Inc., La.App., 255 So.2d 800 (4 Cir. 1971); Davis v. Reynolds, La.App., 96 So.2d 368 (2 Cir. 1957).
In the Joseph Fein case, supra, the Court said:
"The fixing of the fee lies within the sound discretion of the trial court and should not be disturbed unless clearly erroneous."
Taking the foregoing principles into consideration, we do not believe that the trial court abused its discretion in fixing the expert fees under the circumstances of the instant proceedings. We agree with the trial court's judgment that the expert fees of the medical experts should be fixed and taxed as costs, as follows: Dr. Frank J. Jones, $800.00; Dr. Philip H. Jones, $600.00; Dr. Norton W. Voorhies, $600.00; Dr. Emmett L. Irwin, $175.00; and Dr. J. E. Toups, $100.00. We also agree with the trial court's judgment that the expert fees of the handwriting experts have been substantiated in the following amounts: for Albert D. Osborn, $2,459.50; and for Francis D. Murphy, $1,826.06. This makes a total of all expert fees which we feel are allowable and should be taxed as costs in the instant proceedings the sum of $6,560.56.
Accordingly, we affirm the judgment of the trial court in favor of the plaintiff in rule and appellee, Thomas Franklin Moody, and against the defendant in rule and appellant, Succession of Benjamin Roumain, at appellant's costs.
Affirmed.