385 So.2d 410 (1980)
Everette P. HEBERT
v.
DIAMOND M COMPANY et al.
No. 13223.
Court of Appeal of Louisiana, First Circuit.
May 5, 1980.
Rehearing Denied July 7, 1980.
*411 Joseph L. Waitz, Houma, for plaintiff and appellee.
Raymond Morgan Allen, Lafayette, for defendant and appellant Diamond M Co.
John J. Weigel, New Orleans, for third-party defendant and appellant F.M.C. Corp.
J. Mark Graham, Houma, for intervenor Aetna Cas. & Sur. Co.
Before COVINGTON, LOTTINGER and COLE, JJ.
COVINGTON, Judge.
This is an appeal by Diamond M Company, defendant, from a judgment in favor of Everette P. Hebert, plaintiff. Plaintiff has answered the appeal, asking for an increase in certain awards; i. e., future medical expenses and loss of future earnings. Intervenor, Aetna Casualty & Surety Company, has also answered the appeal, seeking reimbursement from Diamond M Company for additional medical expenses, maintenance or cure which intervenor may be required to pay to the plaintiff.
This suit arises out of a simple state of facts. Plaintiff, Everette P. Hebert, while in the employ of Dowell, Inc., was seriously injured on November 30, 1977, when he was dropped about 15 feet onto the steel deck of the crew boat from a personnel carrier which was being lifted by a crane aboard a tender barge. At the time of the accident, plaintiff was aboard the M/V MASTER JODY, a crew boat, and was being lifted in a personnel carrier suspended from defendant's crane located aboard the Diamond M tender barge, S-25, which served as an Exxon fixed platform in the Gulf of Mexico off the coast of the State of Louisiana.
As a result of the accident and resulting injuries, on June 30, 1978, plaintiff sued Diamond M Company[1] in personam in state court pursuant to the "Savings to Suitors" *412 clause of the Federal Constitution and 28 U.S.C.A. § 1333, alleging a cause of action under General Maritime Law, based on negligence and unseaworthiness.
On August 30, 1978, Diamond M Company filed an answer in the nature of a general denial, and demanded a trial by jury of all actions and causes of action involved herein.
On October 10, 1978, a petition of intervention was filed by Aetna Casualty & Surety Company, the workmen's compensation insurer of Dowell, Inc., seeking recovery of benefits and medical expenses paid to plaintiff.
On October 18, 1978, defendant brought F.M.C. Corporation, as manufacturer, distributor and seller of the Diamond M crane involved, into the suit by a third party demand for indemnification and/or contribution.[2]
The trial court denied defendant's request for jury trial, and on October 13, 1978, defendant applied for writs to this Court. On October 24, 1978, an alternative writ of mandamus was issued by this Court, commanding the trial judge to grant a trial by jury or to show cause why the writ should not be made peremptory. In due course this Court made the writ peremptory, holding that "since trial by jury is a remedy recognized in this state, this remedy is available to a litigant in a maritime or admiralty claim the same as it would be to any other civil litigant before our courts." Hebert v. Diamond M Company, 367 So.2d 1210 (La.App. 1 Cir. 1978).
On November 15, 1978, plaintiff filed a supplemental petition, alleging alternatively the applicability of the Jones Act, 46 U.S.C.A. § 688, by virtue of his employment by defendant as a seaman permanently attached to and working aboard the Diamond M tender on which the alleged accident occurred. Moreover, plaintiff averred that as a seaman under the Jones Act, "petitioner elects to have his claims tried by the court rather than by a jury."
On December 28, 1978, the clerk's office mailed notice of the trial by jury set for January 29, 1979.
On December 29, 1978, the plaintiff filed a rule to show cause why the jury trial should not be stricken on the ground that as a Jones Act seaman, he was entitled to elect and had elected to have his case tried by the Court rather than by a jury. On January 4, 1979, defendant filed a motion for partial summary judgment, seeking to have the Jones Act claim dismissed. Thereafter, plaintiff moved for partial summary judgment to have himself declared a Jones Act seaman as to Diamond M.
On January 10, 1979, the trial court denied the rule to strike the jury, and took the motions for partial summary judgment under advisement.[3]
Prior to trial, stipulations were made regarding the intervenor's claim whereby the parties recognized Aetna's right to reimbursement of amounts paid to plaintiff for maintenance in the sum of $2,984.00, and for medical expenses in the sum of $10,613.40, which sums were to be added to any award made to plaintiff and paid directly to Aetna.
The matter then came on for trial before the jury and the trial judge. During the trial, Diamond M admitted liability and admitted that plaintiff was a seaman.
After the case was tried and submitted, the jury rendered a verdict in plaintiff's favor against defendant in the sum of $470,000.00 for loss of future earnings, $104,000.00 for pain, suffering, mental anguish and disability, and $76,000.00 for future medical expenses, or a total amount of $650,000.00. The jury also returned a general verdict in favor of the plaintiff in the same amount.
On March 8, 1979, the trial court rendered its written reasons for judgment and, on its *413 own motion, rendered and signed judgment in favor of Hebert against Diamond M in the sum of One Million, Forty-six Thousand Dollars ($1,046,000.00), together with legal interest from date of judicial demand and costs. Judgment was also entered in favor of intervenor, Aetna, in accordance with the stipulations in the suit. Except for questioning the date from which the interest should be awarded, the post-judgment rules and motions raised no new issues. The motion for new trial by defendant, and a motion for additur by plaintiff, were denied. This appeal and the answers thereto followed.
On this appeal, the plaintiff has formally withdrawn his claim under the Jones Act and seeks recovery only under the general maritime law; it is thus not necessary for us to decide whether the trial judge erred in electing to try the case himself as a Jones Act claim rather than letting the jury decide it, or whether the jury correctly decided that Everette P. Hebert was a "borrowed servant" of Diamond M Company within the meaning of Jones Act coverage at the time of the accident. Hence, the case is before us as though it is an appeal from a judgment on the jury verdict in favor of the plaintiff in the amount of $650,000.00.
We turn to the assessment of damages as made by the jury. The record shows that plaintiff Hebert was dropped a distance of about 15 feet onto the steel deck of the crew boat. He sustained injuries to his back, his left arm (with contusion to the ulnar nerve) and his left ankle (with three broken bones). Due to the accident, plaintiff developed serious mental disorders. He received only superficial treatment at the scene and was in great pain, at least until he could be taken to the hospital. He has been hospitalized on three occasions: first, for surgery to his ankle; second, for a myelogram for his back; third, for pelvic traction for his back. He has not returned to his former work or any gainful employment.
A metal pin was inserted during ankle surgery. Hebert was in full leg cast for six months and a partial cast for a period of time thereafter. Dr. Christopher Cenac, the treating physician, testified that plaintiff walked with an awkward, rolling gait, as though the hinge action of the ankle is not normal. He was of the opinion that Hebert would require surgery to remove the pin and either fusion or a joint replacement to repair the ankle. The record establishes permanent residual damage to the ankle which will cause a permanent limp when the plaintiff walks.
The back injury necessitated hospitalization twice, once for eight days for the myelogram, and then eleven days for pelvic traction. At present the plaintiff wears a transcutaneous electrical nerve stimulator to relieve the back pain. The record establishes that plaintiff's present condition of spondylolisthesis was caused by the accident and that he will probably require a spinal fusion to help alleviate the pain. There is also permanent nerve damage in his back. Regardless of whether Hebert has the spinal fusion, the medical evidence shows definite permanent damage to his back. Dr. Cenac testified to a substantial disability rating to the back. Dr. Stuart Phillips, plaintiff's consulting physician, testified that plaintiff is restricted to lifting only light weights (from 10-25 pounds).
As to his arm, Hebert will require surgery because of the ulnar nerve injury. This will necessitate three days' hospitalization, six weeks in a cast, and six weeks of rehabilitation, according to Dr. Phillips. There was also expert testimony that plaintiff's mental condition was delaying the nerve surgery. As to the physical problems associated with the nerve, Dr. Phillips testified that Hebert has pain and numbness and has a tendency to drop things because the ulnar nerve is the one that supplies the hand muscles.
The record also establishes that plaintiff's mental illness is a disabling condition. Dr. Thomas Moore, who was the plaintiff's treating psychiatrist, diagnosed his condition as a depressive reaction to the accident. This serious mental disorder can not be controlled without heavy medication.
*414 At the time of the trial, plaintiff had been on seven different drugs. Dr. Moore expressed the opinion that Hebert could not even be rehabilitated to a clerical job or similar light work. Dr. Moore expressed his opinion as follows:
"I think he'll be in a chronic depression, and that the depression would vary in terms of its depth from anywhere from being totally disabling to almost being vegetative, and if you really want to get into it, there would probably be the possibility of suicide because of his inability to be what he felt he should be."
We have carefully examined the record in this case, and find that there was no manifest error in the jury's conclusion that plaintiff Hebert sustained a permanent disability from engaging in gainful employment over a long period of time, as reflected by its fixing of the award for loss of future earnings at the sum of $470,000.00. However, in making this computation, the jury fell into manifest error. The economic expert, using a discount rate of 5% and a wage increase rate of 7%, determined that Hebert would suffer a loss of future earnings of $980,260.95. The jury award, being less than half of that amount, is such as to shock our consciences if it was allowed to remain untouched. In accordance with the directions of our Supreme Court in Coco v. Winston Industries, Inc., 341 So.2d 332 (La. 1976), we must raise that special award to $780,000.00.
The record supports the jury's awards for pain, suffering, mental anguish and disability, and $76,000.00 for future medical expenses. We find no abuse of the trier of fact's discretion in fixing those awards to plaintiff Hebert at the total sum of $180,000.00.
With respect to the award of general damages, each case must be weighed and evaluated according to its own particular facts and circumstances. A scale of prior awards, made for merely generically similar medical injuries, can not be used by a reviewing court to ascertain whether or not a particular trier of fact has abused its "much discretion", accorded by LSA-C.C. art. 1934(3), in the award to this particular injured person under the facts and circumstances peculiar to this particular case. Reck v. Stevens, 373 So.2d 498 (La.1979).
In Reck v. Stevens, supra at 501, the Court stated:
"Thus, the initial inquiry must always be directed at whether the trier court's award for the particular injuries and their effects upon this particular injured person is, a clear abuse of the trier of fact's `much discretion,' La.Civ.C. art. 1934(3) in the award of damages. It is only after articulated analysis of the facts discloses an abuse of discretion, that the award may on appellate review, for articulated reason, be considered either excessive, Carollo v. Wilson, 353 So.2d 249 (La.1977); Schexnayder v. Carpenter, 346 So.2d 196 (La.1977), or insufficient, Olds v. Ashley, 250 La. 935, 200 So.2d 1 (1967). Only after such determination of abuse has been reached, is a resort to prior awards appropriate under Coco for purposes of then determining what would be an appropriate award for the present case.
"In the initial determination of excessiveness or insufficiency, an examination of prior awards has a limited functionif indeed the facts and circumstances of the prior awards are closely similar to the present. The prior awards may serve as an aid in this determination only where, on an articulated basis, the present award is shown to be greatly disproportionate to past awards (not selected past awards, but the mass of them) for (truly) `similar' injuries, see Coco at 341 So.2d 334.
"However, absent an initial determination that the trial court's very great discretion in the award of general damages has been abused under the facts of this case, the reviewing court should not disturb the trier's award. Wilson v. Magee, 367 So.2d 314 (La.1979)."
Finding no abuse of discretion, we affirm those portions of the jury's award. Hanzy v. Sam, 385 So.2d 355 (1980). Therefore, we amend the trial court's judgment in accordance therewith.
*415 Appellant's next contention is that the plaintiff is not entitled to interest from date of judicial demand, but only from date of judgment. Since this case is in the posture of a claim under the general maritime law rather than a Jones Act claim, the trial court had discretion to award pre-judgment interest. See Canova v. Travelers Insurance Company, 406 F.2d 410 (C.A. 5 Cir. 1969); Ferdinandtsen v. Delta Marine Drilling Company, 235 So.2d 461 (La.App. 4 Cir. 1970). There was no abuse of this discretion.
On the question of the award of expert fees, we find that the trial court's award of fees to Ms. Terry Ringer and Mr. Roger Villarrubia was in error, because these two individuals were not qualified by said court as experts. Ms. Ringer is a court reporter who offered factual testimony concerning a deposition she took and transcribed. Mr. Villarrubia, as executive director of Terrebonne General Hospital, offered factual testimony concerning hospital costs at his hospital; he did not give any expert testimony on any aspect of the case. We, thus, amend the judgment insofar as awards of expert witness fees to Ms. Ringer, and Mr. Villarrubia were made. LSA-R.S. 13:3666; Wallace v. State Farm Fire & Casualty Insurance Company, 345 So.2d 1004 (La.App. 2 Cir. 1977), writ refused, 349 So.2d 334 (La.1977).
As to the award of expert fees for the expert witnesses who were properly qualified as such, we find no abuse of the trial court's discretion. The awarding of expert fees rests within the discretion of the trial court to be fixed with reference to the "value of time" and the "degree of learning or skill" of the expert witness. LSA-R.S. 13:3666; Succession of Moody, 306 So.2d 869 (La.App. 1 Cir. 1974), writ denied, 310 So.2d 639 (La.1975).
As stated above, intervenor, Aetna Casualty & Surety Company, has answered the appeal of Diamond M seeking a decree in its favor against Diamond M, declaring intervenor's entitlement to recover the full amount of any medical expenses or maintenance or cure which intervenor may be required to pay plaintiff Hebert in addition to those covered by the stipulation in this suit.
We have reviewed the record and find that there is nothing before us presented by Aetna which we can review. The judgment from which Diamond M appealed awarded Aetna $13,597.40, in accordance with the stipulation entered into prior to trial. On May 9, 1979, a satisfaction of judgment was executed by Aetna satisfying and settling the claims asserted by Aetna against Diamond M in the instant suit. The judgment as to Aetna has been satisfied. LSA-C.C.P. art. 2085; Jack v. Lambert's In Metairie, Inc., 348 So.2d 102 (La.App. 4 Cir. 1977).
For the reasons assigned, we amend the judgment to increase the total award to $780,000.00 for loss of future earnings; we delete and deny the expert witness fees of $50.00 and $100.00 to Mr. Roger Villarrubia and Ms. Terry Ringer, respectively; we affirm the jury award in favor of plaintiff, Everette P. Hebert, and against the defendant, Diamond M Company, in all other respects. We amend the judgment accordingly. We deny and dismiss the answer to the appeal filed by Aetna Casualty & Surety Company, intervenor, without prejudice to its rights in other legal proceedings. The appellant, Diamond M Company, is cast for costs of this appeal.
AMENDED AND AFFIRMED.
NOTES
[1] Joseph Hawks, safety director of Diamond M Company, was also named in the petition as a defendant, but was dismissed without prejudice during the trial.
[2] During the trial defendant's third party demand against F.M.C. Corporation was dismissed with prejudice, so that demand is not before the Court.
[3] Neither this action, nor the actions referred to in the footnotes above, are reflected in the minutes of the Court; however, they are referred to by the Court in its written reasons.